[No. 13438.    Department One. — December 24, 1891.]

KATHARINE B. FELTON ET AL., RESPONDENTS, v. EDWARD J. LE BRETON ET AL., APPELLANTS.

APPEAL — REVIEW OF EVIDENCE — FINDINGS — NEW TRIAL. — When a material finding of fact is unsupported by the evidence, and is contradictory of other findings, the failure to make the finding in accordance with the evidence necessitates a new trial.

ID. — CONSTRUCTION OF FINDINGS — SUPPORT OF JUDGMENT. — When a finding of fact is susceptible of two constructions, one of which is supported by the evidence and the other not, only that construction which is supported by the evidence will be considered; yet if the findings, when construed in harmony with the evidence, do not support the judgment, it must be reversed.

TRUST DEED AS SECURITY — FORECLOSURE — AUCTION SALE — PURCHASE BY TRUSTEE — PERMISSION OF COURT — DISCHARGE OF TRUSTS. — When a deed of trust of real and personal property is given to a debtor as security for advances made and to be made, with power to sell and dispose of the

property, and all of the parties to the deed are made parties to a fore-closure suit, in which a full accounting of the trust is had, and a sale is made under the decree therein, at which the trustee purchases the prop-erty at public auction, by express leave of the court, the trustee becomes thereby vested with absolute title freed and discharged of the lien and trusts created by the original deed.

ID. — MORTGAGE WITH POWER OF SALE — FORECLOSURE. — An absolute con-veyance of property by a debtor to his creditor, in trust, that he may sell the same, and out of the proceeds discharge the debt, is, in effect, only a mortgage with a power of sale, which the grantee may treat as such; and if he proceeds by foreclosure, his relation to the property is the same as that of a mortgagee in the foreclosure of an ordinary mortgage.

ID. — SALE BY ORDER OF COURT — RIGHT OF TRUSTEE TO PURCHASE. — When a sale is made under the direction of a court of equity, by officers appointed by the court, it is not a sale by the trustee, and the rule forbidding a trustee to purchase at his own sale does not apply.

ID. — PURCHASE BY BENEFICIARY. — A beneficiary under a deed of trust may purchase at a sale in pursuance of the trust as effectually as any creditor may purchase the property of his debtor at a judicial sale, and the trustee may bid for the beneficiary, at his instance, without impairing the validity of the sale.

ID. — TRUST FOR ATTORNEY NOT NAMED — FORECLOSURE — PARTIES — ES-TOPPEL. — Where the grantee of a deed of trust held it in part as security for the fees of an attorney of the grantor, subject to his own advances to the grantor, but without including the name of the attorney in the deed, and including such fees in the amount recited in the deed as due to himself, and such attorney was employed to foreclose the deed of trust, and advised the trustee that he could purchase the property at a sale under the foreclosure, and hold it discharged of the trust, the attorney and his representatives are estopped to claim that the result of the pro-ceedings is contrary to what he advised, upon the ground that the attorney was not made a party defendant to the foreclosure suit.

ID. — ATTORNEY AND CLIENT — DOUBLE TRUST — FAILURE TO ADVISE CLIENT. — Where it appears that, by the act and inducement of the attorney, the grantee in the trust deed was induced to permit the attorney's fees to be included in the sum due him, it cannot be claimed that the trustee held the property under a double trust, where it does not appear affirma-tively that the attorney who acted for the grantee, both in the execu-tion of the instrument and in the foreclosure suit, advised him of the legal effect and consequences of so including it, or that any possible detriment could occur from assuming such relation of double trust in reference to the property.

ID. — TRANSACTIONS BETWEEN ATTORNEY AND CLIENT — PERFORMANCE OF DUTIES OF ATTORNEY — BURDEN OF PROOF. — In any attempt by an attorney to enforce an agreement on the part of his client growing out of transactions between them connected with the very business in reference to which the relation of attorney and client exists, the burden of proof is always upon the attorney to show that the dealing was fair and just, and that the client was fully advised by him; and a failure to prove that the attorney had performed his duties to his client imposes upon the court the necessity of adjudging the invalidity of the transaction between them, without requiring the client to show a failure in such performance.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Pillsbury & Blanding*, for Appellants.

The relations of attorney and client existing between Felton and Le Roy at the inception of the trust are fatal to the trust obligations asserted by the plaintiff in this action; the attorney could not make his client a trustee, to the advantage of himself and to the detriment of the client. (Weeks on Attorneys at Law, sec. 268; *Kisling* v. *Shaw*, 33 Cal. 440; 91 Am. Dec. 644; 1 Story's Eq. Jur., secs. 310, 311, 401; *Gibson* v. *Jeyes*, 6 Ves. Jr. 273; *Howell* v. *Ransom*, 11 Paige, 540–542; *Ford* v. *Harrington*, 16 N. Y. 288, 289; *Jennings* v. *McConnel*, 17 Ill. 150; *Brock* v. *Barnes*, 40 Barb. 527–533; *McCormick* v. *Malin*, 5 Blackf. 523, 524; *Evans* v. *Ellis*, 5 Denio, 640, 643; *Starr* v. *Vanderheyden*, 9 Johns. 253; 6 Am. Dec. 275.) All presumptions are in favor of the client, and against the propriety of dealings between him and his attorney; and the burden of proof is on the attorney to show by extrinsic evidence that all was fair and just. (*Kisling* v. *Shaw*, 33 Cal. 425; 91 Am. Dec. 644; *McMahon* v. *Smith*, 6 Heisk. 167; *Jennings* v. *McConnel*, 17 Ill. 148; *Farmer* v. *Farmer*, 39 N. J. Eq. 211, 216.) Felton, by his acts and advice touching the foreclosure suit, is estopped to assert the trust against Le Roy, his heirs and legal representatives. (*Davis* v. *Davis*, 26 Cal. 39, 41; 85 Am. Dec. 157; *Martin* v. *Zellerbach*, 38 Cal. 315; 99 Am. Dec. 365; *Smith* v. *Penny*, 44 Cal. 165; *Dezell* v. *Odell*, 3 Hill, 219, 221; 1 Greenl. Ev., sec. 207; Bigelow on Estoppel, 431–437; 1 Perry on Trusts, sec. 285.) Inasmuch as Felton had been the attorney of the Estudillos, it was an irregular act which he led Le Roy to commit; and he is estopped by his acquiescence in that proceeding. (Lewin on Trusts, 325, 327; *Walker* v. *Symonds*, 3 Swanst. 79; *Wilkinson* v. *Parry*, 4 Russ. 272; *Cocker* v. *Quail*, 1 Russ. & M. 535;

*Nail* v. *Punter*, 5 Sim. 565; *Fellows* v. *Mitchell*, 1 P. Wms. 81; *Langford* v. *Gascoyne*, 11 Ves. 336; *White* v. *White*, 9 Ves. 555; *In re Chirtsey Market*, 6 Price, 280, 284.) Any trust relations which were ever established between Felton and Le Roy were waived by the action of Felton, and ceased and terminated by agreement. (Civ. Code, sec. 2230, subd. 1; Perry on Trusts, secs. 285, 921; Civ. Code, secs. 871, 2282.) Beneficiaries take no estate or interest in the property. (Civ. Code, sec. 863.) Le Roy had a legal right to buy in the property at a judicial sale, when, by the decree of the court, he was permitted to become a purchaser, and he thereafter held it as his own in fee-simple absolute. (*Wright* v. *Ross*, 36 Cal. 414, 445, 446; *Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587, 590, 591.) A mortgagee, in order to avoid loss to himself by a sale to a stranger at a less price than he is willing to pay, may purchase at a judicial sale when he is both a trustee and a *cestui que trust.* (2 Jones on Mortgages, secs. 1636, 1881, 1882; *Bergen* v. *Bennett*, 1 Caines Cas. 9, 19; 2 Am. Dec. 281.)

*Garber, Boalt & Bishop, Crittenden Thornton*, and *F. H. Merzbach*, for Respondent.

HARRISON, J. — October 1, 1870, Juana I. Estudillo and others, owners of the Guadalupe rancho, in Santa Barbara County, and of the San Leandro rancho, in Alameda County, and certain other real and personal property in Alameda County, executed to Theodore Le Roy a deed of conveyance of said property, in trust, to sell and dispose of the same, and out of the proceeds to pay certain indebtedness on their part to himself, specified in the instrument, with interest, and such sums as should be afterwards advanced by him to them; and also all taxes, liens, costs, and legal expenses which might be paid or incurred by him in managing the property and protecting the title thereto. The property had been in litigation for several years, and was at this time heavily encumbered, but measures had been agreed upon by which it

was to be removed from litigation, provided a loan could be effected sufficient to pay off the various claims. In this emergency, Mr. John B. Felton, who had been attorney for the Estudillos in their litigation in reference to the property, applied to Le Roy to loan them money with which to free the property from its encumbrances, and to take the property himself as security for such loan. Felton was also, and had been for many years, the sole legal adviser of Le Roy, and acted as his legal adviser in the making of this loan. The Estudillos were indebted to Felton and certain other attorneys in the sum of forty-nine thousand dollars, which Felton was also desirous of having secured by the deed of trust, and, as an inducement to Le Roy, proposed to him that these claims of the attorneys, including his own, should be subordinate to the claim of Le Roy for the indebtedness to him, as well as for his advances, and should be paid only after Le Roy had been fully reimbursed. Le Roy thereupon consented to the arrangement, and the instrument above named was executed to him, and he accepted the trust, and entered into possession of the property. The instrument recited that the grantors were indebted to Le Roy in the sum of $446,849, which sum was made up by adding the forty-nine thousand dollars due the attorneys to the amount of the money advanced by and owing to Le Roy. About a year after the execution of the instrument, Felton, at the request of Le Roy, executed to him a declaration in writing, in conformity with his verbal agreement, that the forty-nine-thousand-dollar item should not be paid until after Le Roy had been entirely reimbursed for the principal and interest of his own claim, together with the advances and expenses made and incurred by him in the management of the property. Le Roy continued in the management of the property under this conveyance for several years, making sales of portions from time to time, advancing additional amounts to the Estudillos, and incurring expenses in its management; but finding that the indebtedness was increasing from year to year, instead of being extin-

guished, as had been anticipated when the instrument was executed, became desirous to have the trust extinguished, and for this purpose consulted Felton as his attorney, and was advised by him that he could not purchase at any sale made by himself under the power contained in the instrument without having the property so purchased by him subject to the same trust, but that if he should institute an action in equity in the nature of a foreclosure, and for the sale of the property under a decree of the court, he could then purchase the property at such sale, and hold it discharged of the trust. Under this advice, a suit was commenced in September, 1884, in the name of Le Roy, in the late third district court for Alameda County, against the grantors in the instrument, but without making Felton and the other attorneys defendants therein. Felton prepared the complaint in this action, had it signed by two attorneys who were employed in his office, as attorneys for Le Roy, signed it himself as counsel for the plaintiff, and conducted the suit until his death, in May, 1877. After his death, Le Roy employed B. S. Brooks, Esq., as his attorney, who thereafter conducted the litigation. Upon the trial of the action, a full accounting on the part of Le Roy under the deed of trust was taken, and judgment rendered in January, 1879, that there was due to Le Roy the sum of $768,077, and directing a sale of the property by commissioners appointed by the court. In this sum was included the item of forty-nine thousand dollars, and interest thereon from October 1, 1870, subject, however, to the priority in payment of the indebtedness due to Le Roy. Orders of sale were thereafter issued upon the judgment to the commissioners appointed therein, and, after proper notice, they made sales of the property mentioned and described in said judgment, and at such sales Le Roy became the purchaser of the property described in the complaint herein; and on the 26th of March, 1880, and on the twenty-sixth day of May, 1880, he received from the commissioners, respectively, conveyances of the property so purchased by him; and there-

after, during his lifetime, and his administrator after his death, held possession and received the income of said property under the claim that he was the sole owner thereof. The proceeds of the sales by the commissioners were not sufficient to satisfy the judgment in favor of Le Roy, but left a deficiency of $167,-514.42, on the twenty-ninth day of May, 1880. The amount included in the judgment on account of the sum of $49,000 aforesaid, with interest thereon, was less than the amount of this deficiency, being only $109,821.25.

The present action was brought by the representatives of Felton, for the purpose of having it declared that the property, after its purchase by Le Roy at the commissioners' sales, under the order of the court as aforesaid, was still held by him subject to the trust under which it was originally conveyed to him, in the proportion which Felton's claim for attorney's fees bore to the amount of indebtedness in favor of Le Roy at the time when the instrument of October 1, 1870, was executed, and that an accounting be taken between the plaintiffs and defendants concerning the trust; that the trust be executed by selling the land, and the proceeds be apportioned between the plaintiffs and the defendants in the proportions in which they might be entitled to receive the same. Upon the trial of the cause, the court made its findings of fact substantially in accordance with the aforesaid statement, and found, as conclusions of law, that at the execution of the instrument of October 1, 1870, there was a resulting trust in favor of Felton and against Le Roy in the proportion which his part of the $49,000 bears to the sum of $397,849, which still exists in favor of the representatives of Felton against the representatives of Le Roy in and upon the lands described in the complaint, subject to a priority in favor of Le Roy as to his proportion of the same, secured by said trust deed; that the decree rendered in 1879, in the suit of *Le Roy* v. *Estudillo*, in the third district court, did not extinguish the trust, either by its own force or by way of

estoppel; and rendered judgment accordingly in favor of the plaintiffs, directing an accounting and a sale of the property, and an apportionment of the proceeds in accordance with said finding. A motion for a new trial was made by the defendants, which was denied, and an appeal has been taken from the judgment, and from the order denying a new trial.

1. One of the material findings of fact made by the court is unsupported by the evidence in the case, and is contradictory to other findings. In finding 40 the court finds that when Le Roy consulted Felton for the purpose of bringing the action of *Le Roy* v. *Estudillo,* he was advised by him that by the sales under a judgment rendered in such action the "trust would be wholly extinguished and terminated *as to the defendants in said action,* and he would become, *as against such defendants,* the owner in fee-simple absolute of all the property acquired by and through such sales"; while in finding 41 the court finds that Felton advised him that such procedure "would fully terminate said trust." We find no evidence in the record showing that Felton at any time advised Le Roy that by a sale under such judgment the trust would be extinguished and terminated " as to the defendants in said action," or that there would be any qualification upon the termination of the trust. The only evidence in the record upon this subject is that of Steinbach, that Felton advised Le Roy that the trust would be terminated by a suit in foreclosure, and that Le Roy could bid in the property and own it absolutely, and that if he should purchase the property at the sale, he would have an absolute right and title to it, and be liable to nobody, and that the claim of Felton and the other attorneys would be terminated.

The fact embraced in this finding is so material to the judgment, that a failure to make the finding in accordance with the evidence necessitates a new trial. If, however, we should assume that only that finding which is supported by the evidence is to be considered by us, under the principle that when a finding of fact is sus-

ceptible of two constructions, one of which is supported by the evidence and the other not, only that which is supported by the evidence will be considered, we must then hold that the findings do not support the judgment.

2. By his purchase at the sales under the judgment in the case of *Le Roy* v. *Estudillo,* Le Roy became vested with all the title that the grantors in the instrument of October 1, 1870, had at the date of that instrument in the property so purchased, freed and discharged of the lien and trusts created by the instrument. All of the parties to that instrument were before the court, and under the issues presented by the pleadings in the action, the acts of Le Roy in the management of the trust were investigated, and an account was taken of his receipts and disbursements, and also of the amount remaining unpaid of the original indebtedness, for the securing of which the instrument was executed, and his said acts and account were approved and confirmed by the court; and in its judgment directing a sale of the property for the purpose of satisfying the amounts thus determined to be due to Le Roy, the court directed that such sales should be made at public auction, upon notice thereof, by commissioners appointed by it, and that at such sale " the plaintiff (Le Roy) and any and all others, whether parties to this suit or not, may be and become purchasers upon compliance with the terms of sale "; and that upon the execution of a deed to the purchaser, he should become vested with the title in fee to said real estate so purchased by him.

An absolute conveyance of property by a debtor to his creditor, in trust, that he may sell the same, and out of the proceeds discharge the debt, is, in effect, only a mortgage with a power of sale, and the grantee may treat it as such, and, instead of making a sale under the power, may go into a court of equity for a foreclosure and sale under its decree; and whenever such course is pursued, his relation to the property is the same as that of a mortgagee in the foreclosure of an ordinary mortgage. The

purpose with which Le Roy brought that action was to extinguish the trust upon which he held the property, by having the property sold under the direction of the court, and thereby to realize a sum sufficient in amount to satisfy the indebtedness for which it had been conveyed to him. It was for the interest of all parties to the instrument that any sale that might be made under such direction of the court should be for as high a price as could be obtained. If at such sale Le Roy could not bid as a purchaser, he might be compelled to witness a sacrifice of the property which had been given as security for his debt, with the possible consequence of a loss of a portion of his indebtedness, and at the same time the debtors would fail to have their debt extinguished by the same sacrifice of their property. Unless the title which Le Roy would receive, if he became the purchaser at such sale, would be of the same character as that which would be received by any other purchaser, he would necessarily refrain from bidding at the sale, and thus the competition of bidders would be diminished, and the very object of the action would be defeated.

The rule which forbids a trustee from bidding at a sale made by himself is based upon principles of equity, and is the creature of courts of equity; but the same court which has established and which enforces the rule can dispense with its enforcement whenever the circumstances of any case do not require the application of those principles. The rule which forbids a mortgagee to purchase the property sold under a power of sale contained in his mortgage rests on the same principles, but in some states provision has been made by statute that under such power the mortgagee may cause the sale to be made by a sheriff or other public officer, and himself become the purchaser, while in other states it is provided that the mortgagee may become the purchaser at his own sale under such power, if it can be made to appear that the sale was made in good faith and the proceedings were fairly conducted. A court of equity has the same right to determine, in advance of the sale

in any particular case, that the circumstances are such as will justify it to authorize the trustee to become a purchaser, as it has after the sale to approve a purchase made by a trustee under statutory authority. When the sale is made under the direction of a court of equity, by officers appointed by the court, it is not a sale by the trustee, and the rule forbidding him to purchase at his own sale has no application.

The appointment of commissioners in the case of *Le Roy* v. *Estudillo* to make the sale was equivalent to the appointment of a new trustee and the discharge of Le Roy, and gave to him the same right to purchase at the sale that the beneficiary has at a sale made by the trustee under a deed of trust created for his benefit. It must be borne in mind that Le Roy was the beneficiary under the trust, as well as the trustee, and that his rights as beneficiary, as well as his obligations as trustee, were entitled to receive consideration from the court. It is a rule in equity that the beneficiary under a deed of trust may become the purchaser at a sale by the trustee, to the same extent and with the same results as may be exercised by a creditor in any other action who purchases the property of his debtor at a judicial sale (*Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Easton* v. *German-American Bank*, 127 U. S. 538); and the trustee may himself make the bid at the instance of the beneficiary, without impairing the validity of the sale. (*Richards* v. *Holmes*, 18 How. 143.) In *Wright* v. *Ross*, 36 Cal. 414, many principles similar to those in the present case were involved, and it was there held that Ross, to whom Buckelew had assigned the Turner mortgage as security for his own debt, had the right, in a suit for foreclosure, instituted by himself upon the.Turner mortgage, to purchase the property covered thereby, and hold it discharged of any trust in favor of Buckelew; "that, having elected to purchase at that sale as a legitimate method of procuring payment *pro tanto* of the debt due to him from Buckelew, he is entitled to the exclusive benefit of the purchase, unless by the terms of the contract a trust is

created which denies to Ross the usual right of a creditor to purchase the property of his debtor at a fair judicial sale."

If Le Roy had proceeded against the will or without the knowledge of Felton in subjecting the property to a sale under the direction of the court, there would be much force in the proposition that the property purchased by him at such sale would not be divested of the trust in favor of Felton, under which he originally received it; but in view of the fact that the suit under which the sale was made was instituted upon the advice of Felton, that thereby the trust would be fully terminated, and that Felton was himself the attorney for Le Roy, and prepared the complaint, instituted and conducted the suit up to the time of his death, and that he included as defendants in the action such parties as he deemed essential for carrying out the purpose for which Le Roy had employed him, we do not think that it can lie in the mouth of the representatives of Felton to claim that the result of those proceedings is contrary to what he had advised. If Felton had included himself and his associates as defendants in the action, they would have been bound by the judgment, and the property purchased by Le Roy freed from any trust in their favor as fully as from the trust in favor of the other defendants. His failure to include them in the suit cannot be availed of by his representatives, any more than it could have been by himself.

3. It was held by the court below that upon the execution of the instrument of October 1, 1870, Le Roy held the property under a double trust, — that which is expressed in the instrument, and that arising from the parol agreement between himself and Felton in reference to the forty-nine thousand dollars, subsequently reduced to writing; and that, although by his purchase under the judgment he held the land freed from the trust in favor of the Estudillos, it is still bound by the other.

Felton had been the legal adviser of Le Roy for many years prior to the execution of that instrument, and was

his sole adviser in the transactions which resulted in the execution of the instrument itself. It was at his solicitation that Le Roy consented to make the loan and accept the trust, and the item of forty-nine thousand dollars was included therein for the benefit of Felton and his associates, upon the inducement that that sum should not be payable out of the proceeds of the property until after Le Roy had been fully reimbursed.

While an attorney is not prohibited from having business transactions with his client, yet, inasmuch as the relation of attorney and client is one wherein the attorney is apt to have very great influence over the client, especially in transactions which are a part of or intimately connected with the very business in reference to which the relation exists, such transactions are always scrutinized by courts with jealous care, and are set aside at the mere instance of the client, unless the attorney can show by extrinsic evidence that his client acted with full knowledge of all the facts connected with such transaction, and fully understood their effect; and in any attempt by the attorney to enforce an agreement on the part of the client growing out of such transaction, the burden of proof is always upon the attorney to show that the dealing was fair and just, and that the client was fully advised. (*Kisling* v. *Shaw*, 33 Cal. 440; 91 Am. Dec. 644; *Brock* v. *Barnes*, 40 Barb. 533; *Howell* v. *Ransom*, 11 Paige, 542; *Ford* v. *Harrington*, 16 N. Y. 289; *Evans* v. *Ellis*, 5 Denio, 643; *Dunn* v. *Dunn*, 42 N. J. Eq. 437; 1 Story's Eq. Jur. 310, 311.) In the words of Lord Eldon, he must make it manifest that he gave to his client "all that reasonable advice against himself that he would have given him against a third person." (*Gibson* v. *Jeyes*, 6 Ves. 278.) The relation of Felton to Le Roy, as his legal adviser, demanded of him the highest fidelity to the interests of his client. He was precluded from assuming any relation towards Le Roy which would prevent him from devoting his entire energies to his interests, and was likewise precluded from asking of Le Roy to assume any relation to him by which their

interests might become antagonistic.   There is nothing in the record to show, or even to intimate, that Felton was at any time influenced by any other motive than to promote the interests of Le Roy.   The court finds "that in effecting the said transactions between the said Estudillos and Le Roy, and inducing the said Le Roy to permit the said sum of forty-nine thousand dollars to be included in the said trust deed, as aforesaid, the said Felton was not aiming to secure a benefit and advantage to himself, to the injury and detriment of the said Le Roy, nor by an abuse of the confidence of the said Le Roy in him as his legal adviser, but it was a detriment to said Le Roy to include said sum of forty-nine thousand dollars in said trust deed, to the extent that it involved the bringing in of additional parties in any action to foreclose said trust deed, and in defense of the action referred to in finding 51 herein"; referring to an action similar to the present, brought by one Newhall against Le Roy, in behalf of the other attorneys.   (*Newhall* v. *Le Breton*, 119 U. S. 259.)

When it was thus shown that by the act and inducement of Felton, Le Roy had sustained injury and detriment in allowing the forty-nine thousand dollars to be included in the trust deed, it was incumbent upon the plaintiffs, in their action to enforce the trust concerning said sum, to show to the court that Felton had fully discharged his duty towards Le Roy, and had advised him of the legal effect and consequences of so including it. The record fails to show that any such advice was given by Felton, or that Le Roy was in any way informed that any possible detriment could occur from assuming such relation of double trust in reference to the property conveyed to him.   It was not necessary for the defendants to show that there had been any failure on the part of Felton in the performance of his duties to his client. The burden of proof was upon the plaintiffs to show that they had been performed by him, and a failure to make such proof imposed upon the court the necessity of adjudging the invalidity of the transaction between them.

The judgment and order of the court below are reversed, and a new trial ordered.

GAROUTTE, J., and PATERSON, J., concurred.