[L. A. No. 3806.   Department Two.—May 16, 1917.]

## HENRY STIEGLITZ, Appellant, v. MARIA ENCARNACION DE SEPULVEDA SETTLE et al., Respondents.

NONSUIT—CONSIDERATION OF EVIDENCE.—In passing upon a motion for a nonsuit, every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the plaintiff.

ATTORNEY IN FACT—EMPLOYMENT OF BROKER TO SELL LAND—RATIFICATION OF PAROL AGREEMENT.—An attorney in fact under a general power of attorney has authority to contract to pay a broker a commission for selling the land of his principal, and to cure the defect of a parol agreement with the broker by a subsequent ratification in writing.

ATTORNEY AT LAW—DEALING WITH CLIENT.—An attorney at law is under no actual incapacity to deal with or purchase from his client. All that is required where the relation of confidence exists and where the questioned transaction has a bearing upon that relationship is a clear showing that there has been no abuse of confidence and no advantage taken.

APPEAL from a judgment of the Superior Court of Los Angeles County.   F. E. Densmore, Judge Presiding.

The facts are stated in the opinion of the court.

William A. Alderson, for Appellant.

E. H. Bantzer, and Davis, Kemp & Post, for Respondents.

HENSHAW, J.—Plaintiff sued defendant, Maria Encarnacion de Sepulveda Settle, to recover his commissions as broker for services which he had rendered in the sale of

certain of defendant's land. The other defendant is the husband of Maria Encarnacion, married to her after the consummation of the transactions forming the basis of this litigation. At the conclusion of plaintiff's evidence defendants moved for a nonsuit upon "the general broad ground of insufficiency of the evidence to justify the decision and that the plaintiff's evidence showed moral turpitude." The court granted the nonsuit upon the ground that "the plaintiff had failed to prove a sufficient case for the jury, and the evidence introduced was insufficient to support a judgment for the plaintiff." The court's power to grant a nonsuit has been so often discussed, the limitations of that power so often declared, that it should be necessary to do no more than refer to *Estate of Arnold,* 147 Cal. 583, [82 Pac. 252], *Estate of Chevallier,* 159 Cal. 161, [113 Pac. 130], and *Estate of Caspar,* 172 Cal. 147, [155 Pac. 631]. In passing upon such a motion "every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the plaintiff." (*Estate of Arnold,* 147 Cal. 583, [82 Pac. 252].) The evidence discloses that defendant Maria Encarnacion was a widow. She owned a one-half interest in 860 acres of land, a part of the Rancho Palos Verdes, and had other large property interests and land holdings. This particular land had come to her from her former husband Sepulveda. She did not speak English. Apparently she could not write. Her trusted business manager and man of affairs was Richard Mahar, whom she had known long and well and with whom she could converse in Spanish. Mahar held her general power of attorney. The plaintiff is, and for many years has been, an attorney at law. In the past he had been in several matters Mrs. Sepulveda's attorney at law. At the time of the transactions here questioned he was her attorney at law in a partition suit to divide the lands in the Rancho Palos Verdes above referred to. This action had been instituted some time before. It was the only pending matter in which plaintiff was acting as Mrs. Sepulveda's attorney at law. He was not her general counsel. He was not under retainer. She had never consulted him at his office. He had never been to her house more than three times, and she had never sought his advice upon her general affairs. Mrs. Sepulveda, as is not unusual with ladies in her

position, needed money. While owning much land, she had no fixed income, and taxes and her personal expenditures were burdening her with debts. She told her attorney in fact, Mr. Mahar, that she wanted to sell her undivided interest in the Rancho Palos Verdes. The partition proceedings affecting this land had not been completed by final judgment, but had been practically closed. Mrs. Sepulveda talked many times to Mr. Mahar about selling the land, and urged him to make, and he did make, efforts so to do, all of which he reported to his principal. A number of real estate agents became active in their efforts to secure purchasers. The bids and offers which he received he duly reported. As a result of all of these efforts, the highest and best offer which was obtained for the land was $250 an acre. Mr. Mahar talked this offer over with plaintiff, and both agreed that the price offered was too low, and Mr. Mahar so reported to his principal. Then Mr. Stieglitz told Mr. Mahar that if he, with the approval and assent of Mrs. Sepulveda, would give him permission to sell the ranch on commission, he would use his endeavors to secure a purchaser. Mr. Mahar consulted Mrs. Sepulveda and duly informed Mr. Stieglitz that he could go ahead and sell the ranch, and, if he succeeded, Mrs. Sepulveda would pay him the usual commission. Mr. Mahar, as does Mr. Stieglitz, testifies to this effect, and further that he did consult Mrs. Sepulveda, did explain to her that Mr. Stieglitz would endeavor to sell the ranch upon the payment of the usual commission if he succeeded, asked her if she was willing to pay the commission under these circumstances, to which she replied *"Por supuesto"*—of course. At this time Mr. Stieglitz had no particular purchaser in mind. He not only had not seen George Peck, who became the purchaser, but did not even think of him. After this agreement and understanding, which, because of the relations existing between the parties, plaintiff did not think necessary at the time should be in writing, Mr. Stieglitz used his best efforts to find a purchaser, and succeeded in the person of George Peck. Mr. Peck, after many negotiations with Mr. Stieglitz and Mr. Mahar, all of which were reported to Mrs. Sepulveda, finally purchased the land for four hundred dollars an acre, this purchase price being approved by Mrs. Sepulveda before the contract of purchase was entered into on her behalf by her attorney in fact. After the sale had been consummated,

Mr. Stieglitz asked for payment of his commissions, but owing to Mrs. Sepulveda's immediate need for money, that which was received from the first payment had been expended, and Mr. Mahar so explained to Mr. Stieglitz, saying that he would have to wait until July for his money, the sale having been effected on March 19th. Then, because of this delay, Mr. Stieglitz, expressing a willingness thus to wait for his compensation and expressing also the natural apprehension that "something might happen to me or to him, thought it would be no more than right that an agreement be prepared and that he sign the agreement with me." Mr. Stieglitz then prepared an agreement dated March 17th (antedating by two days the sale of the land), which agreement authorized him to sell the land upon "the regular or customary commission for making said sale as fixed by the Realty Board of the city of Los Angeles." This was signed by Maria Encarnacion, by her attorney in fact, Richard Mahar, and bore also the signature of Mr. Stieglitz over his acceptance. Both understood the reason why the contract bore a date before its actual writing, and both understood and agreed that no concealment should be made of this circumstance, and none in fact was made. Thereafter and in the same year defendant Maria Encarnacion married defendant George Settle, and in September he called upon Mr. Stieglitz and asked him whether he had any claims against his wife. Mr. Stieglitz asserted that he did have such a claim in the matter of his commissions in the sale of this land, to which Settle replied that he would never get the commission and that he would see that he did not.

Touching briefly upon the law, no question arises but that the power of attorney held by Mr. Mahar was amply sufficient to authorize him to do everything which in fact he did do. But in addition to this is the evidence (unnecessary to establish the legality of Mr. Mahar's conduct, but standing undenied, as it does, persuasive of fair dealing), that Mrs. Sepulveda was fully advised of and fully assented to the principal transaction. Mr. Mahar, under his power of attorney, had the authority to enter into the contract with Mr. Stieglitz for the payment of this commission. The uncontradicted evidence is that he did so enter into it with the knowledge and approval of his principal. It was equally within his power to cure the defect of the parol agreement by sub-

sequent ratification in writing, which was done and made. (Civ. Code, secs. 2307, 2310.)    Touching Mr. Stieglitz' position and conduct, there is absolutely nothing shown in the evidence which would forbid him, on either legal or ethical grounds, from entering into a contract with Mrs. Sepulveda which had no bearing on or relation to his position as her attorney at law in the partition suit, especially so as in the making of the contract he did not even personally see her and so could not have personally influenced her, and the explanation of the contract was made by and her assent given to her trusted agent and man of affairs.    An attorney is under no actual incapacity to deal with or purchase from his client.    All that is required where the relation of confidence exists and where the questioned transaction has a  bearing upon that relationship is a clear showing that there has been no abuse of confidence  and no advantage taken.    (*Felton* v. *Le Breton,* 92 Cal. 457, [28 Pac. 490] ; *Cox* v. *Delmas,* 99 Cal. 104, [33 Pac. 836] ; *Vanasse* v. *Reid,* 111 Wis. 303, [87 N. W. 192] ; 1 Story's Jurisprudence, sec. 313.)    ''There is no authority establishing, nor was it ever laid down, that an attorney cannot purchase from his client what was not in any degree the object of his concern as attorney. . . . Under such circumstances  he is  not the  attorney *in hac re.''*    (*Montesquieu* v. *Sandys,* 18 Ves. Jr., 313, [34 Eng. Reprint, 331].)

In support of this judgment given on nonsuit respondents seem to place reliance upon certain testimony given by Mr. Mahar to the  effect that he  understood  that he  and Mr. Stieglitz were to divide the commission, and that he thought he and Mr. Stieglitz might as well make a commission upon the sale of the property as anybody else; and also upon the fact that after the sale Mr. Peck insisted on giving him—Mr. Stieglitz—five hundred dollars, which he refused to  take, telling Mr. Peck that if he wanted to give this money, to draw his check for that amount to Mr. Mahar, which Mr. Peck did, and that subsequently Mr. Mahar insisted upon Mr. Stieglitz taking half of the amount.    As against this, however, is the positive testimony of Mr. Stieglitz that there had been no previous agreement between himself and Mr. Peck, or between himself and Mr. Mahar, concerning the five hundred dollars, and that he never had any agreement with Mr. Mahar by which he—Mr. Mahar—was to receive any part of the commissions for the sale of the land.    To sustain the

nonsuit it would have to be said as matter of law that this evidence to which we have last adverted absolutely destroys all the force and effect of the rest of the evidence in the case. But this manifestly is not so. The most that can be said of it is that it is evidence tending to impeach the fair dealing of Mr. Mahar with his principal. It does not at all affect the legal rights of plaintiff as above set forth.

The judgment appealed from is therefore reversed.

Melvin, J., and Lorigan, J., concurred.