[Civ. No. 3612.   First Appellate District, Division One,—December 24, 1920.]

## HENRY STIEGLITZ, Respondent, v. MARIA ENCARNACION DE SEPULVEDA SETTLE, Appellant.

[1] ATTORNEY AND CLIENT—DEALINGS BETWEEN—FAIRNESS AND GOOD FAITH—BURDEN OF PROOF.—The relation of attorney and client is one of special trust and confidence; therefore, in dealing with his client, the highest degree of fairness and good faith is required of an attorney, and courts view all such transactions with suspicion and examine them with the utmost scrutiny; and in any attempt to enforce such an agreement the burden is upon the attorney to show that the client entered into the contract freely and with full knowledge of all the facts connected with the transaction.

[2] ID.—DEALING WITH CLIENT THROUGH HER ATTORNEY IN FACT—GOOD FAITH NOT EXCUSED.—The mere fact that an attorney, in effecting a sale of certain property of his client, is dealing with his client through her attorney in fact does not excuse him from acting throughout the transaction in the highest good faith toward her.

[3] ID.—SALE OF CLIENT'S PROPERTY—DIVISION OF COMMISSION—ABSENCE OF GOOD FAITH—EVIDENCE—ERRONEOUS INSTRUCTIONS.—In an action by an attorney at law to recover commissions as a broker

for services rendered in the sale of a client's interest in certain real property, it is error for the trial court to instruct the jury to find for the plaintiff, if there is evidence in the case from which the jury would be warranted in finding that plaintiff, without the knowledge of his client, agreed with her attorney in fact to divide with the latter a certain sum of money received from the purchaser, or any commission received by plaintiff from a sale of the property, or that plaintiff, before the sale of the property, concerted with defendant's attorney in fact to ignore a higher offer, without investigation as to the character thereof; and conclude a sale to another person at a lower net price, but upon which they were to receive and divide a large sum of money as commission.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

W. C. Petchner for Appellant.

Wm. A. Alderson and K. A. Miller for Respondent.

KERRIGAN, J.—This is an action instituted by the plaintiff to recover commissions as a broker for services rendered in the sale of the interest of the defendant, Mrs. Maria E. de Settle, in a certain tract of land consisting of 886 acres. The plaintiff had judgment for the sum of $12,581.20, and the defendant appeals, the ground for reversal urged being that the trial court, by its instructions to the jury, based upon what it deemed to be the law of the case, practically withdrew the question at issue from their consideration. We think this contention must be sustained. A reference to some of the testimony in the case will show the grounds upon which we base this conclusion.

Prior to and at the time of said sale the plaintiff was an attorney at law practicing in San Pedro, and the defendant, being the widow of one Aurelia W. Sepulveda, also resided in that locality. Later she married Henry Settle, and the latter for that reason has been joined as a party defendant. The deceased husband of Maria E. de Settle left a large estate consisting principally of land, his only heirs being said defendant and his daughter.

Part of the estate coming to said defendant was an undivided one-half interest in the tract of land above referred to. She was unable to speak the English language, nor could she read or write any tongue. At the time of the transaction here involved she had given a general power of attorney to one Richard Mahar, who had been the administrator of her deceased husband's estate, and the plaintiff had acted as attorney for the administrator. The plaintiff had also represented the defendant in important litigation, and was also acting as her attorney in a partition suit instituted by said daughter against her for the division of said 886-acre tract, which suit was pending at the time of the sale by him of the defendant's interest in said land. The defendant, being indebted, decided to sell said interest, and after talking the matter over with her attorney in fact Mahar, directed him to secure a purchaser therefor. The record does not show when this conversation took place, but later and in the month of February, 1912, Mahar reported to the plaintiff that the land had to be sold, and that the highest offer he had been able to secure for the defendant's interest therein was $250 per acre. Thereupon the plaintiff stated as his opinion that the price offered was too low and that he thought he could secure a purchaser at a better price. He accordingly requested Mahar to see the defendant and ascertain whether she would authorize him to sell the land and pay him the usual commission. Mahar, according to his testimony given at the trial, took the matter up with the defendant, and reported to the plaintiff that she was willing to permit him to sell the property and to pay him a commission. Plaintiff thereupon began negotiations with one Geo. H. Peck, also a resident of San Pedro, with the result that on the 19th of March, 1912, plaintiff effected a sale of defendant's interest in the land for $400 per acre to Peck. According to the testimony of the plaintiff and Mahar, the original authority from the defendant to the plaintiff to sell the property was verbal, but when plaintiff was informed by Mahar that there would be some delay in paying the commission he requested that the authority theretofore given be put in writing. Thereupon plaintiff prepared such a contract, dating it two days earlier than the agreement of sale with Peck, and it was executed by

plaintiff and by Mahar as attorney in fact for the defendant. Touching this phase of the case the defendant testified that Mahar had no conversation with her in which she promised to pay plaintiff a commission in the event he should secure a purchaser for the property. As an incident of the sale, on account of which the plaintiff is suing for a commission, is the giving of a check for $500 by the purchaser to Mahar, and its division between the latter and the plaintiff. As to this the plaintiff testified that after the contract of sale had been consummated, Peck called on him and offered him a check of $500 as a fee for preparing the written contract of sale. This the plaintiff declined to accept, saying, "I don't want anything at all. You can draw it to Richard Mahar if you want to." This was done. Mahar upon receiving the check, remarked to the plaintiff that they each had reduced their fees as administrator and attorney for the administrator, respectively, $350 and $375, that it would be fair to accept this check for $500, and to divide the amount thereof equally between them, which was done. The plaintiff's testimony is that this $500 was not paid as a fee, and Peck testified that this payment was made by him for the purpose of binding the contract and for no other purpose. According to the testimony of Mahar, there was an understanding between him and the plaintiff to divide between them any commission collected by plaintiff on account of the sale of the property, and this is denied by the plaintiff. A witness for the defendant testified that he had, on behalf of a real estate concern, representing a prospective purchaser, about two weeks before the contract of sale to Peck was executed, made an offer to Mahar to purchase defendant's interest in the property at $400 per acre net, without liability on the part of the vendor to pay a commission; that Mahar rejected this offer, saying that the property had already been sold to Peck. According to the testimony of Mahar, the plaintiff must have been aware of this offer, for Mahar, as plaintiff's witness, testified that he had submitted every offer received by him to the plaintiff. Other witnesses testified that on a certain occasion plaintiff, when asked why he had not given a certain real estate agent a chance to sell the property, replied that he had nothing

to do with the matter at all, that he was merely the defendant's attorney.

From the evidence it can fairly be said that the plaintiff was the attorney for the defendant, not only in the partition suit, but also in the very matter out of which this litigation sprang, that is, the sale of the property. Mahar must have considered him as such, for he reported to and conferred with him about all offers received for it made to him either before or after the sale to Peck. We have already referred to the statement of the plaintiff that his only connection with the sale was as defendant's attorney.

At the conclusion of the trial the court, taking the view that what the supreme court had said on the former appeal was the law of the case, virtually instructed the jury to find for the plaintiff.

[1] The relation of attorney and client has always been regarded as one of special trust and confidence. Therefore, in dealing with his client the highest degree of fairness and good faith is required, and courts view all such transactions with suspicion, and examine them with the utmost scrutiny; and in any attempt to enforce such an agreement the burden is upon the attorney to show that the dealing was fair and just, and that the client entered into the contract freely and with full knowledge of all the facts connected with the transaction. (*Felton* v. *Le Brenton,* 92 Cal. 469, [28 Pac. 490]; *Cox* v. *Delmas,* 99 Cal. 123, [33 Pac. 836].) In the first of these cases cited the supreme court said: "While an attorney is not prohibited from having business transactions with his client, yet, inasmuch as the relation of attorney and client is one wherein the attorney is apt to have very great influence over the client, especially in transactions which are a part of or intimately connected with the very business in reference to which the relation exists, such transactions are always scrutinized by courts with jealous care, and are set aside at the mere instance of the client, unless the attorney can show by extrinsic evidence that his client acted with full knowledge of all the facts connected with such transaction, and fully understood their effect; and in any attempt by the attorney to enforce an agreement on the part of the client growing out of such transaction, the burden of proof is always on the attorney to show that the

dealing was fair and just, and that the client was fully advised."

Some of the features of this case, if the evidence and inferences fairly deducible therefrom are to be credited, are too strongly marked to admit of any doubt of the applicability to it of the rule just announced.

Notwithstanding that Mahar held defendant's power of attorney, and had authority thereunder to make the contract with plaintiff here in question, still plaintiff was the defendant's attorney at law in the pending partition suit, and there is ample in the evidence to warrant the conclusion that he was also her attorney in the matter of the sale of this property. Consequently he was bound by the rule just stated. [2] The mere fact that he was dealing with her through her attorney in fact did not excuse him from acting throughout the transaction in the highest good faith toward her. [3] How can it be said that he observed this obligation if he, without the knowledge of his client, agreed with her attorney in fact to divide with him the $500 received from Peck, or any commission received by him from a sale of her property? Can it be doubted that the prospect of profiting through such a division would naturally influence the conduct of the defendant's attorney in fact in the discharge of his duty to his principal? And there can be no doubt that the plaintiff acted in bad faith and to the prejudice of the defendant if, according to one of the witnesses for the defendant, he, before the sale to Peck, permitted an offer of $400 per acre net to be rejected without investigation as to the character of the offer. It is quite apparent that if Mahar, the defendant's attorney in fact, had a *bona fide* offer of $400 per acre net, and this was known to the plaintiff before entering into the agreement of sale with Peck (as the jury from the evidence would be warranted in believing), it was an act of gross bad faith on the plaintiff's part in concerting with Mahar to ignore such offer, and conclude a sale to another person at the same rate per acre, but upon which they were to receive and divide a large sum of money as commission.

As was said in the former appeal (*Stieglitz v. Settle,* 175 Cal. 131, [165 Pac. 436]), an attorney at law is under no actual incapacity to deal with or purchase from his client. All that he is required to do when the relation of attorney

and client exists, and when the questioned transaction has a bearing upon the relationship, is to make a clear showing that there has been no abuse of confidence, no advantage taken. It may be that in the case at bar the jury would find that the plaintiff did act toward the defendant with the required high degree of good faith and without concealment. All we have endeavored to show in the foregoing references to the testimony is that, taking the evidence favorable to the defendant, a case was made out for the consideration of the jury, just as the supreme court in the former appeal demonstrated that considering the evidence favorable to the plaintiff, the court committed error in granting the defendant's motion for nonsuit. As to the former opinion in this case, it cannot be held that what the court there said is the law of the case. Here we are not considering an appeal from a judgment following the granting of a nonsuit, and there is a substantial difference in the evidence in the two trials.

The judgment is reversed.

Richards, J., and Seawell, P. J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court February 21, 1921.

All the Justices concurred, except Sloane, J., who voted for granting of petition.