[Civ. No. 4319.   Second Appellate District, Division One.—December 23, 1924.]

PAUL J. McCORMICK et al., Executors, etc., Respondents, v. MARIA ENCARNACION DE SEPULVEDA SETTLE, etc., Appellant.

[1] BROKER'S COMMISSIONS — CONTRACT OF SALE—MEANING OF WORD "NET" — CONSTRUCTION—EVIDENCE.—In an action to recover a broker's commission, where the vendor was attempting to defeat the broker's right to the commission because the contract of sale between the vendor and purchaser provided that the vendor was to receive a stated price per acre "net," the vendor contending that the word "net" meant that she was to receive the price stated without paying a commission, the word "net" was intended to guard against any deductions which the purchaser might claim; but if it were to be conceded that such was not the intention, then the true meaning was doubtful, and evidence offered for the purpose of proving that the terms of the contract were not intended to cover the subject of commissions was admissible.

[2] ID.—CONFIDENTIAL RELATIONS—GOOD FAITH.—It is the duty of an attorney or other person occupying a confidential relation of trust toward another to act in the highest good faith toward his principal or beneficiary.

[3] ID. — FINDINGS—EVIDENCE.—In such action, the findings of the trial court holding contrary to defendant's contention that the broker (who was an attorney), through the alleged confidential relationship between him and defendant, obtained an advantage over defendant in the matter of the sale of defendant's property and was, therefore, not entitled to a commission, were supported by the evidence.

(1) 9 C. J., p. 581, n. 55; 22 C. J., p. 1201, n. 7 New.    (2) 6 C. J., p. 682, n. 84.    (3) 6 C. J., p. 759, n. 76; 9 C. J., p. 655, n. 43.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry T. Gage, Ingall W. Bull and W. C. Petchner for Appellant.

W. A. Alderson and K. A. Miller for Respondents.

CONREY, P. J.—This action was commenced by Henry Stieglitz, now deceased, to recover his commissions as broker for services which he had rendered in the sale of certain of defendant's land. After the death of Mr. Stieglitz the present plaintiffs as executors of his estate were substituted as plaintiffs. The present appeal is from the judgment entered in favor of the plaintiff after the third trial of the action. At the first trial the court granted a nonsuit upon the ground that "the plaintiff has failed to prove a sufficient case for the jury, and the evidence introduced was insufficient to support a judgment for the plaintiff." On appeal the judgment of nonsuit was reversed. (*Stieglitz* v. *Settle,* 175 Cal. 131 [165 Pac. 436].) The judgment under review on that appeal was not a judgment on the merits. The supreme court, in reviewing that judgment, merely applied the rule that in passing upon a motion for nonsuit "every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor of the plaintiff." After the second trial the appeal was from a judgment against

defendant, entered upon an instructed verdict. That verdict was rendered under instructions whereby the trial court, following what it deemed to be the law of the case, practically withdrew the question at issue from the consideration of the jury. On that appeal the district court of appeal (first district, division one) held that the evidence presented a case on which the defendant was entitled to have the facts determined by the jury. The court of appeal, after reviewing the evidence, said: "All we have endeavored to show in the foregoing references to the testimony is that, taking the evidence favorable to the defendant, a case was made out for the consideration of the jury, just as the Supreme Court in the former appeal demonstrated that considering the evidence favorable to the plaintiff, the court committed error in granting the defendant's motion for nonsuit. As to the former opinion in this case, it cannot be held that what the court there said is the law of the case. Here we are not considering an appeal from a judgment following the granting of a nonsuit, and there is a substantial difference in the evidence in the two trials." (*Stieglitz* v. *Settle,* 50 Cal. App. 581, 587 [195 Pac. 705].)

The third trial was before the court without a jury, and resulted in a judgment against defendant, based upon findings of fact made and conclusions drawn therefrom by the judge of the trial court. Thus it is seen that now for the first time there has been a judgment on the merits, based upon findings covering the issues of fact presented by the pleadings. The present appeal is similar to the case as presented on the former appeals in that in each instance there was, upon some of the important questions of fact, evidence favorable to the party against whom the judgment was allowed in the superior court. But the record on the present appeal approximates more nearly to the case as considered on the first appeal, because the facts found by the court at the third trial harmonize closely with the evidence favorable to the plaintiffs as we find that evidence summarized in the decision of the supreme court.

The defendant, by Richard Mahar, her attorney in fact, delivered to Stieglitz a written agreement, dated March 17, 1912, authorizing Stieglitz to sell to George H. Peck all of the interest of defendant in the described real property (being a one-half interest therein), "at a price to be agreed upon between myself as the attorney in fact of the said

Maria Encarnacion de Sepulveda, and Geo. H. Peck, subject to the ratification or consent of Maria Encarnacion de Sepulveda''; and agreed to pay to Stieglitz for making such sale the regular or customary commission for making said sale as fixed by the realty board of the city of Los Angeles. Said agreement was dated back to March 17th to synchronize with a verbal agreement as to said commission, arranged between Stieglitz and Mahar. The legality of such an arrangement having been upheld by the supreme court, appellant makes no point against the agreement by reason of its date. It is also a conceded fact that at the time of making said agreement, Mahar was the attorney in fact of defendant, under a general power of attorney, which was sufficient to cover a transaction of this kind. Moreover, Mr. Mahar testified that before making the commission contract he went to Mrs. Sepulveda (appellant), and obtained her consent that Stieglitz should have a commission in case he should find a purchaser. It was after the execution of that agreement, and after the sale, but prior to the commencement of this action, that Mrs. Sepulveda became Mrs. Settle, which is her present name.

Proceeding under and in accordance with said written authority, Stieglitz procured the purchase of defendant's land by George H. Peck, to whom the property was conveyed for an actual consideration of $400 per acre; the total price paid to the defendant being the sum of $177,200. The price to be paid by the purchaser, as named in the negotiations between him and Stieglitz, was $375 per acre. But in the contract of sale between the purchaser and the seller a contingent addition to the price was provided for under the following circumstances: The one-half interest in the land, not owned by defendant, was the property of her daughter, Esperanza Larson. It was ascertained that negotiations were then pending by which it was hoped or expected by Mrs. Larson that she would be able to sell her interest in the land at the rate of $400 per acre. In view of this fact, the contract provided for the sale of defendant's land to Peck at the price of $375 per acre, "with the express understanding that if Esperanza Larson, the owner of the remaining one-half interest in said property, should on or before the first day of May, 1912, succeed in getting a purchaser for her said undivided one-half interest in the land herein described, then in that event the said party of the second part shall pay to

the said party of the first part an additional sum of $25.00 per acre, making the sale price of this agreement $400.00 per acre net instead of $375.00. . . . And the said party of the second part agrees to pay the said sums of money in the manner and according to the terms and conditions, and at the times hereinbefore specified, that is to say, he will pay $375.00 per acre for said land, and in the event the said Esperanza Larson should get a buyer at $400.00 net per acre, the said second party will then pay the said party of the first part the sum of $400.00 an acre instead of $375.00. . . . '' It was pursuant to the contract as thus made that the purchaser George Peck ultimately paid to defendant the full price of $400 per acre.

[1]  Counsel for appellant claim that the controlling point of this case lies in the interpretation of the contract with Peck whereby defendant agreed to sell her property; that by the terms of that contract she was to get from Peck the sum of $400 per acre *net*—without paying commission; that therefore appellant is entitled to refuse payment of any commission to her agent, because if she is required to make that payment she then will have received not $400 per acre net for her property, but approximately $20 per acre less than said agreed price. In determining the question thus presented, it will serve to clarify the matter if we first consider and interpret the Peck contract solely as it affected the rights of the vendor and the vendee as between themselves. As thus considered, there is no obscurity in the words of the contract. It is provided that in the event of the contingency which afterward occurred, the sale price of the property was to be ''$400.00 per acre net.''

Appellant argues that in the light of the fact that Mrs. Larson then expected to obtain, and in fact did obtain, from her purchasers $400 per acre, without paying a commission to any agent, the provision in the Peck contract, ''making the sale price of this agreement $400.00 per acre net instead of $375.00,'' plainly and certainly meant that the vendor, Mrs. Sepulveda, would pay no commission to her agent; that, therefore, the court erred in overruling appellant's objections to testimony offered for the purpose of proving that the terms of the contract were not intended to cover the subject of commissions. We think, as do counsel for appellant, that the contract is clear and certain in relation to this matter, but we give it a different interpretation. To the purchaser

it was a matter of no concern that the vendor would pay, or would not pay, a commission to some third person. Payment of such commission by her would add nothing to the price paid by him. As between the parties to the contract, therefore, the word "net," as used in the contract, must have referred to something other than expenditures made by the vendor. It did not mean, for example, that the vendor would be excused from paying the cost of the revenue stamps on her deed, or that the purchaser would pay that expense. It was merely one of those words, often inserted "from excess of caution," in agreements, and in this instance was intended to guard against any deductions which the purchaser might claim. The fact that this was not necessary, or that the word used was not apt for the intended purpose, does not give to the word some other equally useless and unexplained meaning. This is not a case like those cited by appellant, where the vendor, *in making his contract of employment with the broker,* specifies that the sale to be procured by the broker must be for a price which will produce to the vendor a specified sum, "net." In such a contract with the agent or broker, the word so used could have no possible meaning other than that the price to be received must be sufficient to leave in the hands of the vendor a stated sum, exclusive of all expenses which the vendor might have to incur by reason of such sale.

If we concede, for a moment, that the contract as written did not necessarily mean that the word "net" referred only to such deductions as otherwise possibly might be claimed by Peck, then it will follow, quite obviously, that the true meaning is doubtful, and that this doubt was open to solution by testimony showing the actual intention of the parties. On this theory the court was not in error in receiving such testimony.

It is also worthy of consideration that, under the Peck contract, if Mrs. Larson had not sold her property prior to May 1st, Peck would have obtained the property of Mrs. Sepulveda at $375, and as to that price the word "net" was not used. It would be a strange result if the defendant was obligated to pay a commission on a sale for $375 per acre, and yet would be wholly exempted from that obligation in the contingency that the sale was consummated at a larger price.

The real problem of this case relates to the questions pertaining to the relations existing between Stieglitz and the defendant. If Stieglitz was in no sense a party to the Peck contract, and not in any way bound thereby, then under the terms of his contract with the defendant he was entitled to the commission claimed by him. This may be illustrated by supposing that defendant had ordered and obtained from a searcher of records an abstract of the title of her land and had then refused to pay for the abstract, for the alleged reason that under her contract with the purchaser she was to receive a stated "net compensation." Undoubtedly, the searcher of records, who had nothing to do with the Peck contract, would be entitled to recover his compensation. To him it would be a matter of indifference whether the defendant paid him out of the proceeds of the sale of the land or paid him out of funds derived from some other source. So here Stieglitz, as broker, became entitled to recover under his contract, unless it can be established that by reason of some relation existing between him and the defendant, affecting the terms of the Peck contract in its application to the payment of a commission, defendant's obligation to him under the brokerage contract never matured.

Appellant contends that there did exist between Stieglitz and defendant a confidential relation of attorney and client as to this very matter in dispute, and at the same time with respect to other matters; and that the fact of such relationship is now a part of the law of the case as determined by the court of appeal in its decision on the last appeal. The decision of the court of appeal cannot be considered as binding in the sense claimed by appellant. We have quoted the words of the court in that decision which show how the decision was limited to the proposition that "taking the evidence favorable to the defendant, a case was made out for the consideration of the jury." The subsequent trial resulted in the first and only finding of fact responding to the claim of appellant that Stieglitz was her attorney. The point relied upon is that because (as appellant claims) the relation of attorney and client existed between Stieglitz and herself, he was required to act in the highest good faith toward her throughout the transaction; and that the circumstances and terms of the sale and of his relationship thereto

are such that it would not be an act of good faith for him to demand and recover the commissions claimed in this action.

[2] It is not necessary to cite decisions affirming the duty of an attorney or other person occupying a confidential relation of trust toward another to act in the highest good faith toward his principal or beneficiary. [3] The two questions at issue are: Was Stieglitz the attorney of appellant in relation to the sale of this property or at all? If he was her attorney, was he, in good faith and conscience, entitled to recover this commission?

The court found and it is an admitted fact that at the time of the transactions in question and long prior thereto Henry Stieglitz was an attorney engaged in practice in the county of Los Angeles, with an office at San Pedro. Referring to paragraph IV of the answer, the court further found that prior to March, 1912, he had performed services for appellant as an attorney at law in a condemnation proceeding mentioned in the answer, and in a partition action of Mrs. Larson against the defendant, and had performed professional services in the matter of the estate of Sepulveda, deceased husband of the defendant (having been employed by the administrator Mahar therein); and that said partition proceedings affected the particular property mentioned in the complaint herein. "But the court finds that it is not true, as alleged in said paragraph, that said deceased performed services as attorney at law to the defendant in all matters requiring legal advice or services, and that he was so actively engaged in her behalf until after the sale of said property by said deceased, as alleged in the complaint; that it is not true that said deceased was at all times, or at all, the general attorney or the legal counselor of the defendant; that it is not true that the defendant relied exclusively on said deceased for legal advice and direction in all, or any, matters; that it is not true that the defendant followed explicitly, or at all, the advice and counsel of the deceased. The court finds that at the time the defendant and said Henry Stieglitz, deceased, entered into said commission contract the commissioners in said partition proceeding had filed their report; that the engagement of said Henry Stieglitz as the attorney for the administrator of the estate of the husband of the defendant had terminated in December, 1910; that in rendering professional services in said proceedings, said Henry Stieglitz did so through said Richard Mahar,

attorney in fact for the defendant; that deceased never met the defendant but two or three times, and could not converse with her because the defendant could only speak Spanish and said Henry Stieglitz could not speak Spanish.

"The court finds that it is not true that said deceased performed any professional services to or on behalf of the defendant, except as employed by the attorney in fact of the defendant, and only in the particular matters aforesaid; that at no time was said deceased the general attorney and counselor of the defendant.

"The court finds that it is not true that the defendant, for any reason, placed an unusual reliance in said deceased as her legal adviser in any matters, and particularly it is not true that she placed any reliance in the deceased as an attorney in respect to the sale of the property mentioned in the complaint; that it is not true that because of any relation of said deceased to the defendant professionally that he gained great familiarity with and knowledge of the property and rights and business affairs of the defendant, but deceased only in a general way knew about such matters and as he was informed by reason of the professional services rendered by him in the proceedings mentioned aforesaid.

"The court finds that it is untrue, as alleged in paragraph VI of said second amended answer, that the defendant advised frequently with said defendant, but the court finds that said deceased only on two or three occasions personally met the defendant; that said deceased was employed by said attorney in fact and at all times relied upon said attorney in fact for his instructions, authority and directions in any and all matters in which he was so employed. The court finds that it is not true that the commission contract set forth in the complaint was attempted to be made, or was made, by the deceased and said attorney in fact clandestinely or surreptitiously, or without the knowledge, consent or acquiescence of the defendant, or that said contract was wrongfully or fraudulently entered into in such manner by said deceased and said attorney in fact, Richard Mahar, with the purpose to take advantage of the confidential and fiduciary relations existing between them and between them and the defendant and to impose upon the ignorance of the defendant at all or to deprive the defendant of any property or rights; that it is not true that there was any understanding or agreement between said Henry Stieglitz and said Richard Mahar that

they would divide between them, or at all, any commission that might be paid or collected pursuant to said contract, or any sum from any source whatever; that it is not true that there was any conspiracy at all between said deceased and said attorney in fact to do anything for their own benefit or the benefit of either one of them.''

The foregoing findings are very much in line with the evidence referred to by the supreme court and relating to the same issues, as that evidence is described in the decision of the supreme court on appeal from the judgment of non-suit. That evidence was in effect the same as the evidence received at the last trial, which resulted in the findings which we have quoted. Commenting thereon, the supreme court said: ''Touching Mr. Stieglitz' position and conduct, there is absolutely nothing shown in the evidence which would forbid him, on either legal or ethical grounds, from entering into a contract with Mrs. Sepulveda which had no bearing on or relation to his position as her attorney at law in the partition suit, especially so as in the making of the contract he did not even personally see her and so could not have personally influenced her, and the explanation of the contract was made by and her assent given to her trusted agent and man of affairs. An attorney is under no actual incapacity to deal with or purchase from his client. All that is required where the relation of confidence exists and where the questioned transaction has a bearing upon that relation-ship is a clear showing that there has been no abuse of con-fidence and no advantage taken.''

In aid of the contention of appellant that Stieglitz did not act in good faith toward her in relation to the sale to Peck, appellant alleged that without her knowledge, and while Stieglitz was representing appellant as her attorney in draw-ing the Peck contract, and while representing and advising her and her attorney in fact concerning said sale, Stieglitz also contracted with Peck to represent, advise, and protect him in relation to the same transaction, and for his services to Peck received from him a fee of $500.

The court found adversely to appellant upon this issue. Specifically, however, the court found that after the consum-mation of the sale, Peck voluntarily and upon his own initia-tive paid to Mahar the sum of $500; that said sum was not on account of and had nothing to do with the purchase price of said land, or said commission contract; that thereafter

Mahar, as the attorney in fact of defendant, paid Stieglitz the sum of $250; that said payment to Stieglitz was on another and different account than the sale of said land to Peck and the performance of said commission contract by Stieglitz; that there never was any agreement between Peck, Mahar, and Stieglitz, or any of them, for the payment of said or any sum by Peck, or as to a division between Stieglitz and Mahar of said or any sum; that Stieglitz never solicited or expected any sum whatever from any source on account of the matters which constitute the subject of this action, other than the payment to him of the commission provided for in said commission contract. These findings are adequately supported by the evidence. On the last trial, as on the first, the same testimony was produced which was summarized by the supreme court in its decision, wherein it referred to the testimony of Steiglitz "that there had been no previous agreement between himself and Mr. Peck, or between himself and Mr. Mahar, concerning the five hundred dollars, and that he never had any agreement with Mr. Mahar by which he—Mr. Mahar—was to receive any part of the commissions for the sale of the land." And notwithstanding that there was evidence tending to contradict this testimony, it was held that the evidence concerning this matter was not sufficient to destroy the force and effect of the other evidence in the case, and was not sufficient to sustain the judgment of nonsuit. And now, although the court has made its findings of fact upon conflicting evidence, yet it is apparent that they rest upon sufficient evidence.

For the foregoing reasons, the judgment is affirmed.

Houser, J., and Curtis, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 19, 1925.

All the Justices concurred.