[Sac. No. 2854. Department Two.—January 3, 1919.]

## In the Matter of the Estate of DANIEL FLINT, Deceased.

ESTATES OF DECEASED PERSONS—WILLS—MENTAL UNSOUNDNESS—UNDUE
INFLUENCE—EVIDENCE—SUBMISSION OF CASE TO JURY.—In a pro-
ceeding for the revocation of the probate of a will on the ground of
undue influence and unsoundness of mind, if there is substantial evi-
dence on either subject, it is the duty of the trial court to submit
the case to the jury.

ID.—OPINION TESTIMONY—WEIGHT.—Evidence bearing upon the ques-
tion of unsoundness of mind is of no greater value than the reasons
given in support of the opinion, and is not alone sufficiently substan-
tial to require the presentation of the case to the jury.

ID.—INSUFFICIENCY OF EVIDENCE.—In this proceeding it is held the proof
of incompetence was too unsubstantial to justify its submission to the
jury, and that there was no evidence of undue influence.

APPEAL from a judgment of the Superior Court of
Sacramento County. Peter J. Shields, Judge. Affirmed.

The facts are stated in the opinion of the court.

C. E. McLaughlin, Arthur M. Seymour, and Sheridan
Downey, for Appellant.

Devlin & Devlin, for Respondent.

WILBUR, J.—The will of the decedent having been pro-
bated, appellant petitioned for its revocation, alleging undue
influence and unsoundness of mind. Issues were joined, and
upon the trial thereof a judgment of nonsuit was rendered,
and Russell Flint appealed, claiming that there was sufficient
evidence of unsoundness of mind and of undue influence to
be submitted to a jury. If there was substantial evidence on
either subject, it was the duty of the trial court to submit the
case to the jury. No useful purpose will be subserved by a
lengthy statement of the evidence bearing upon the question
of unsoundness of mind. There was evidence of the daugh-
ter, of a trained nurse, and business acquaintances, that, in
their opinion, the decedent was of "unsound mind." This
evidence, however, as we have heretofore, in effect, held
(*Estate of Collins,* 174 Cal. 663, [164 Pac. 1110]; *Estate of*

*Purcell,* 164 Cal. 300, 306, [128 Pac. 932]), is of no greater
value than the reasons given in support of the opinion, and is
not alone sufficiently substantial to require the presentation of
the case to the jury.   The decedent was about eighty-five years
old.   The will was drawn three months and five days before
he was accidentally killed while crossing a railway track.   At
the time of the execution of the will the wife of the testator
(to whom he had been married sixty-five years) and their six
sons and two daughters were living, their ages ranging from
thirty-six to fifty-eight years.   The wife predeceased her hus-
band, dying about one month after the execution of the will.
The point most strongly insisted upon by appellant is that
the will itself, when compared with the actual facts concern-
ing the decedent's property and his dealings with his wife
and children, show that the will was the product of insane
delusions directly operating upon him at the time it was exe-
cuted.   The provision in regard to the wife is as follows:

"Secondly, all of my property, both real and personal and
mixed of which I am now possessed is the community prop-
erty of myself and my wife Mary E. Flint, but inasmuch as I
have heretofore deeded to her valuable property as and for
her own separate property, the income of which is more than
she will need for the remainder of her life I make no provi-
sion for her in this will, my intention being at the time of the
execution of said deeds that they should be an advancement
of her interest and title in my estate.   Should she, however,
decline to accept said property so deeded to her as her share
and demand her community share of my estate, then I desire
such property to be appraised and considered as part of her
share of said community property."

The provision in regard to the daughters is as follows:

"I declare that my daughters Lillian Bruner and Alice
Lampert have each heretofore received advancements in cash
from me on their shares of my estate and for that reason I
give and bequeath them only the following amount, to wit:
To the said Lillian Bruner the sum of $5000 . . . ; to the
said Alice Lampert the sum of $5000." It is provided that
these amounts should be a lien upon real estate left to the
sons, and to be paid in annual installments of not less than
one thousand dollars, but without interest.   ". . . my inten-
tion being not to hamper them (the sons) in the enjoyment

of their said real property by the immediate payment of said large legacy."

Evidence was introduced on behalf of respondents tending to show that at the time the will was executed the decedent had conveyed to his wife their residence, consisting of a house and lot valued at nine thousand five hundred dollars, and that he had given each daughter upon her marriage a house and lot, and that from time to time he had made small gifts to his daughters. The estate of the deceased was appraised at $180,467. With regard to the provisions for the wife in the will, it will be observed that she takes, notwithstanding the will, one-half of all of the property by reason of its community character. This seems to be fully recognized by the testator, who specifically declares that all the property "of which I am now possessed, is the community property of myself and my wife, Mary E. Flint." It is recognized also that she was entitled to "demand her community share of my estate." The legal effect of this provision of the will was that the wife was entitled to the ninety thousand dollars' interest in the estate of the deceased, and that it was his desire that the home place, theretofore deeded to her, should be considered in making up her one-half. We need not pause to inquire as to the effect of this express desire on the part of the decedent with relation to the property theretofore conveyed to the wife. Appellant's claim with relation to this clause is that it seems to be founded upon a belief on the part of the testator that he had theretofore conveyed to his wife property, "the income of which is more than she will need for the remainder of her life," and also the suggestion in the will that the deed to her of this property had been made as an equivalent of her half interest in the community property. With reference to the question of the income of the property theretofore conveyed to the wife being sufficient for her support, it may be said that at the time the will was executed the wife was and had for some time been in a hospital, having been operated upon for cancer of the face, and from the circumstance that she had been bedridden for some time and unable to use even a wheeled chair, it may be inferred that her condition was very serious. And, while it is true, as testified by appellant, that the will should be read in the light of the circumstances existing at the time it was executed, and not in view of the fact that the wife died before the testator, it

is, nevertheless, obvious that, owing to her extreme age and physical condition, her wants in this world were not for long. The expectancy of persons of her age was about three years. The decedent does not say that the property conveyed to his wife was of equal value to her share in the community property, as seems to be contended by appellant, but that it was his intention at the time of the execution of the deeds "that they should be an advancement of her interest and title in my estate." It is evident from an examination of the will that it was drawn by an attorney. The language used is not the language of the decedent, but of the attorney. There is not the slightest evidence that these statements in the will, however erroneous they may have been, were the product of an insane delusion. There is not the slightest evidence, other than the language of the will itself, that the decedent believed that he had conveyed to his wife anything other and different from that which he had actually conveyed to her. There is no evidence from any source that he believed the property conveyed to his wife would yield any larger income than it would in fact yield. There is no evidence whatever that decedent had any erroneous belief concerning his property which he adhered to against reason and without foundation. It is useless to speculate upon the reason why the decedent made the statements that he did concerning his bequest to his wife. He is presumed to know, and the evidence is that he did in fact know, that she would be entitled to one-half of all he possessed, and that this would have been ample for her maintenance is conceded. It is also true that an investigation of the amount of gifts of the decedent to his daughters, their adequacy in view of the size of his estate, speculation as to whether or not five thousand dollars should be considered a "large" or small amount, interesting though they may be, are not determinative of the question of an insane delusion. There is no evidence whatever that the testator believed that he had given either of his daughters a dollar more or less than he had in fact given to them. There is no evidence to show that he had made other statements concerning his gifts to them which were incorrect. There is no evidence of the persistence of an erroneous belief, such as is characteristic of an insane delusion. (*Estate of Kendrick,* 130 Cal. 360, 364, [62 Pac. 605].) Much is said by the appellant concerning the inadequacy of the provisions for the wife and the two daugh-

ters. Such an argument, no doubt, is entitled to due consideration. But the decedent had a perfect right to dispose of his property as he saw fit. If we assume, as it is contended we should, that the testator believed that his wife would survive him, as has already been pointed out, her half of the community property would be ample for her maintenance, and at her death she could make such provision for the daughters as seemed to her just and proper. In addition to the statements contained in the will, there is evidence of a number of witnesses tending to prove that the decedent was forgetful, penurious, irritable and unreasonable in some of his conduct. It is suggested that his treatment of his wife was unfeeling, in that he manifested little interest in her while in the hospital, and apparently begrudged the expense of a wheeled chair and of hospital attention. It would be useless to attempt to analyze the reason and motive for the conduct of the testator. It is sufficient to say that his conduct must be construed in the light of the presumption of sanity, and that the evidence falls far short of proof that the decedent entertained any insane delusions whatever, or that he was suffering from general insanity or incompetence. He managed and supervised the household, kept up his interest in the management of two large ranches which he owned, but which the sons were operating, deposited in and drew large amounts of money from the bank, was strong-minded in his dealings with others, but realized that his mental powers were waning, sometimes saying that he was forgetful. In short, the evidence proves what his age indicates, that his mental and physical powers were waning. Without further analysis of the testimony, and without discussion of the well-settled principles of law so often declared by this court on this subject, we conclude that the proof of incompetence was too unsubstantial to justify its submission to a jury. There was no evidence of undue influence operating upon the decedent at the time of the execution of the will.

Judgment affirmed.

Melvin, J., and Lorigan, J., concurred.