[L. A. No. 7142. In Bank.—May 11, 1922.

In the Matter of the Estate of MINNIE UNGER, Deceased. EMILY UNGER CROLL, Appellant, v. FRANCES MOORMAN et al., Respondents.

[1] ESTATES OF DECEASED PERSONS—WILL CONTEST — UNDUE INFLU-ENCE—INSUFFICIENCY OF EVIDENCE.—In this contest to the probate of a will on the ground of undue influence, whatever inferences of such influence as might arise from the circumstances relied upon by the contestant were fully met by the uncontradicted evidence showing how the will was in fact drawn and executed, and no error was committed in granting the motion for a nonsuit at the close of the testimony.

APPEAL from an order of the Superior Court of Los Angeles County admitting a will to probate. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. Parker Wood for Appellant.

Wm. T. Kendrick for Respondents.

WILBUR, J.—This is an appeal from an order admitting to probate a will of the decedent dated March 2, 1918, after the granting of a motion for nonsuit at the close of the testimony in a will contest instituted by the appellant Emily Unger Croll, a daughter of decedent, upon the

ground that the will was procured by the undue influence
of Charles W. Unger, a son of the decedent, and Frances
Moorman, a daughter of the decedent. The only question
involved in the appeal is whether or not the evidence was
sufficient to have sustained a verdict of the jury that the
will was procured by undue influence if such a verdict had
been rendered, for if there was sufficient evidence to sustain
such a finding the court erred in granting the motion for
nonsuit (*Vanderford* v. *Foster,* 65 Cal. 49 [2 Pac. 736];
*Davis* v. *Crump,* 162 Cal. 513 [123 Pac. 294]; *Estate of
Caspar,* 172 Cal. 147 [155 Pac. 631]; *Stieglitz* v. *Settle,* 175
Cal. 131 [165 Pac. 431]; *Estate of Flint,* 179 Cal. 552 [177
Pac. 451]; *In re Wall's Estate,* 187 Cal. 50 [200 Pac.
929]).

The evidence tends to show that the testatrix loved the
contestant, notwithstanding the apparent estrangement be-
tween them; that the respondents Frances and Charles
lived with the testatrix and prevented the contestant from
seeing her mother or living with her, although the mother
desired to live with the contestant and expected to do so
when Charles and Frances married and established homes
of their own; that the testatrix saw the contestant but did
not want Charles and Frances to learn of that fact. The
contestant testified that in 1917 or 1918 her brother Charles
said to her: "I will see that your mother will leave you but
a dollar." Frances went with her mother to a law office
in February, 1918, and two days after the will was executed
returned with her mother to get the will and paid for it.
Appellant also relies upon other evidence showing hostility
between the children before and after the mother's death,
and also upon the terms of the will giving contestant the
mother's gold watch and chain, and upon the claim that the
mother did not understand English and therefore did not
understand the balance of the clause, particularly the word
"resents." The clause of the will thus relied upon by
the appellant to show undue influence is as follows:

"I also give and bequeath to my oldest daughter, Emily
Croll, my gold watch and chain worn by me and I hereby
state that the reason I do not give her an equal share
with my other two children is that I have heretofore done
more for her than for them and I also resent the way
she has treated me as well as other members of my family

and wish to state that I am free to act as I please in this matter and not influenced in any way by either of my two children at the time of making this will.''

Thus the contestant relies upon evidence tending to show an opportunity and a disposition on the part of the respondents to exercise undue influence, and a prevention of counter influence by the contestant, as circumstantial evidence tending to show that the unequal disposition of the mother's property was a result of undue influence on the part of Charles and Frances, the respondents.

On the other hand, it appears that John N. Metcalf, the attorney who drew the will, had known the testatrix for about fifteen years and had been her attorney for a long time. He was familiar with the affairs of the family and the testatrix stated to him fully why she discriminated against the contestant. He questioned her at length concerning her wishes and drew her will in accordance with her directions expressed when he was alone with her. The attorney and his clerk, Agnes L. Boyd, attested the will as subscribing witnesses and testified that the testatrix was not acting under undue influence at the time the will was drawn and executed. There is no evidence that Charles or Frances, the son and daughter charged with undue influence, were present at the time the will was executed, and both testified that they knew nothing about the will until after it was executed. Frances testified that she first learned of the will two days after its date, and Charles that he was away at the time the will was executed and that he did not learn of it until June, and then did not see the will until after his mother's death. **[1]** Whatever inferences of undue influence might arise from the circumstances relied upon by the contestant are fully met by the uncontradicted evidence showing how the will was in fact drawn and executed. Thus the undisputed evidence taken as a whole is insufficient to establish undue influence, even if we wholly discredit the express denial of undue influence by the respondents, as the jury might have done. (For a discussion of the principles involved, see *Estate of Anderson,* 185 Cal. 700 [198 Pac. 407].)

Order affirmed.

Lennon, J., Richards, J., *pro tem.*, Lawlor, J., Sloane, J., Shaw, C. J., and Shurtleff, J., concurred.