[S. F. No. 2091.    Department Two.—July 11, 1902.]

H. S. FISHER, Appellant, v. THOMAS McINERNEY et al.,
Respondents.  WILLIAM NICOL, and GEORGE GOET-
TINGER, Interveners, Appellants.

EXECUTION SALES—PURCHASE BY ATTORNEY—CONSENT OF CLIENT—PRE-
SUMPTIONS—FRAUD UPON CREDITORS.—The purchase by an attorney,
with his client's consent, of the client's property, sold under various
executions, by procuring assignments to himself of the certificates
of sale and deeds thereunder, in the absence of any showing that it
was made for the benefit of the client, or was in fraud of his other
creditors, must be presumed to have been fair and regular as between
the attorney and client, and not to have been in effect a redemption
by the client, nor a fraud upon his creditors.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order deny-
ing a new trial.  Edward A. Belcher, Judge.

The facts are stated in the opinion.

T. Z. Blakeman, for H. S. Fisher, and William Nicol, Ap-
pellants.

Rothchild & Ach, for George Goettinger, Appellant.

Tevlin & Humphreys, and James F. Tevlin, for M. C. Has-
sett, and John Grant, Respondents.

Thomas E. Curran, for Thomas McInerney, Jacob Stutz,
and Michael Farrell, Respondents.

CHIPMAN, C.—Statement of facts: Plaintiff brought the
action in the superior court of the city and county of San
Francisco against Thomas McInerney, M. C. Hassett, and
others, to have certain conveyances set aside and the property
subjected to the payment of a judgment in favor of plaintiff
against McInerney.  Nicol and Goettinger, judgment cred-
itors of McInerney, intervened and sought similar relief to
that asked in the complaint and on similar grounds.  Plaintiff
and interveners were nonsuited at the trial, and now appeal
from the judgment and from the order denying motion for a
new trial.

The property was acquired prior to 1884 by Thomas Moran and Thomas McInerney as copartners; the partnership was dissolved July 6, 1884, and Moran began an action that day in the above-named court for an accounting and division of the partnership property, which action is still pending; judgment was entered settling the partnership accounts, showing a balance due Moran; findings were made and both parties moved for a new trial, and these motions are now pending. On McInerney's motion in that action defendant Charles C. Fisher was appointed receiver of the partnership property, January 3, 1895. Plaintiff's judgment against McInerney for $1,542 and costs was docketed January 25, 1893, and became a lien on whatever interest the latter had in the real estate described in the complaint, being certain eighteen described lots in the city and county of San Francisco, which interest, it is alleged in the complaint, was an undivided one-half. On July, 1894, plaintiff herein caused execution to issue on his judgment, and levied on the interest of McInerney in said property, which was advertised to be sold January 10, 1895, but on January 4, 1895, on motion of McInerney, in Moran *v.* McInerney, the court made an order restraining the sheriff from selling; permission was granted in the latter case to sue the receiver for the purposes of this present action.

One Cresswell obtained judgment against McInerney for $1,268.19 and costs, October 7, 1889. In that action Hassett was attorney for McInerney. Execution issued, and on November 25, 1891, the sheriff sold several pieces of the property, "some to J. J. Brady and some to J. J. Rauer for the sum of $1,569.12," and certificates of sale were delivered to the several purchasers, and February 3, 1892, the sheriff returned execution fully satisfied, the land sold "being portions of the land described in the complaint herein," but the particular pieces are not shown.

November. 23, 1891, Rauer had judgment against McInerney for $228 and costs, and Hassett was McInerney's attorney therein. Execution issued and returned satisfied March 7, 1892, by sale of several parcels of the land in question for $306.50 to Rauer, and one parcel to H. Kroger for $140, but what parcels these were does not appear.

The certificates of purchase in Cresswell *v.* McInerney were

assigned to Hassett prior to plaintiff's judgment,—viz., by Brady, May 21, 1892, for $1,523.06, and by Rauer, the same day, for $230.25,—and on February 19, 1894, Hassett transferred these certificates to William J. Gleason. On September 1, 1892, prior to plaintiff's lien, Rauer assigned his judgment against McInerney to Hassett, and on February 19, 1894, Hassett transferred the judgment to Gleason. May 11, 1894, the sheriff made three deeds to Gleason, conveying the lots described in the above-mentioned certificates (description of lots not shown). On the same day Gleason conveyed the lots thus deeded to him to Hassett, and the sheriff's deed to Gleason and Gleason's to Hassett were recorded by request of Hassett January 22, 1895. On November 15, 1894, Hassett conveyed by deed to defendant John Grant all the property described in the complaint, as a mortgage to secure his note for $2,500, given to Matthew Nunan. It does not appear what became of the parcel sold to Kroger. It appears that on April 13, 1892, prior to plaintiff's lien, McInerney made a trust deed to M. Farrell and J. Stutz, acknowledged April 30, 1892, and recorded at request of Farrell July 1, 1893, conveying all the property described in the complaint in trust,—1. To sell the same, and pay all charges and liens against the land; 2. To mortgage the land for like purposes; and 3. To lease the land.

Plaintiff alleges in his complaint that McInerney redeemed in due time from the Cresswell execution sale, and that Hassett, with McInerney's consent, procured the holders of the sheriff's certificates to assign them to Hassett to hold for the use and benefit of McInerney, and with intent to hinder and delay plaintiff and other creditors, at which time it is alleged that Hassett was, and now is, McInerney's attorney in Moran v. McInerney, and also in the Cresswell and other suits against McInerney. It is also alleged that Hassett, with McInerney's consent, assigned all of said sheriff's certificates (except a certificate for parcel 3) to Gleason, without any consideration, and that Hassett on February 20, 1894, with the consent of McInerney, caused the sheriff to make a deed to Gleason of the property embraced in said certificates, and on the same day procured Gleason, with the consent of McInerney, to convey by deed all said property described in said certificates to himself (Hassett) without consideration.

The fact of Hassett being McInerney's attorney is admitted, but the answer denied the allegations of the complaint as to the purpose of Hassett in obtaining the assignments and deeds as alleged, and denied that it was for the benefit of Mc-Inerney, and there is no allegation that Hassett took the assignments with intent to hinder creditors. There is nothing to show any redemption by McInerney, the record showing only the assignment of the certificates to Hassett shortly before the time for redemption expired, followed by sheriff's deeds, as stated above, a consideration therefor as paid by Hassett being named in the assignments. Like allegations are made as to the deed to Grant. It was also alleged in the complaint that McInerney owned no real property not exempt other than that described in the complaint; that he was insolvent when the execution sales were made, and is now insolvent. The answer admits plaintiff's judgment, but denies that it is a lien on the property; denies that in obtaining the assignments of the sheriff's certificates Hassett acted as McInerney's attorney, or that he has since acted as his attorney, but that he has been acting as attorney in Moran v. McInerney in his own interest; denies that he conveyed to Grant otherwise than by way of mortgage to secure the promissory note referred to in the deed; denies specifically allegations of fraud or intent to defraud creditors in any of said transfers.

The judgment-roll in Moran v. McInerney was introduced. In addition to some facts already stated, it appeared by that judgment-roll that in that action Moran filed a third supplemental complaint, alleging that since the interlocutory decree settling the accounts of Moran and McInerney, Hassett acquired and now claims some interest in the property; that he had notice of the pendency of the suit prior to his obtaining said interest, and asked that he be made a party. Hassett answered, admitting that he claimed an interest in the property, admitted notice of the pendency of the action, but denied that he acquired the property for the benefit of McInerney, and alleges that he acquired it free from any trust or claim of any person. On the motion in Moran v. McInerney to restrain the sheriff from selling under execution in Fisher v. McInerney, McInerney filed an affidavit in which he stated that the attached affidavit of Hassett is true and correct; that it is affiant's desire that the sheriff, Fisher, Blakeman,

and Moran be enjoined from selling the land mentioned in the complaint; that "he has no desire to obstruct the payment of his creditors; and that if it shall appear upon the final settlement of said copartnership that he has sufficient interest in the funds that may accrue therefrom," he is willing the judgment of plaintiff, Fisher, "shall be paid out of said fund." The affidavit of Hassett, referred to, stated that he "has an interest as owner of certain portions of the real estate described in the complaint herein; . . . that there is a certain indebtedness due from the plaintiff and the defendant McInerney on account of the copartnership set forth in the complaint to one G. W. Burnett, amounting to $3,500, one of the defendants herein; that there is a large amount of judgment liens against the said property for street assessments due by said copartnership; that Jacob Stutz and Michael Farrell have received a conveyance of all the partnership property from Thomas McInerney in trust, to sell the same to pay off the indebtedness due from McInerney to his creditors; that by reason of the refusal of plaintiff to join in any conveyance, the said trustees have been unable to sell any portion of said property or to discharge any obligation due from McInerney to his creditors." Some other facts, not material to be stated, were set forth. There was introduced in evidence a deed from Hassett to Grant, November 15, 1894, in form, grant, bargain, and sale, and embraced all the property described in the complaint in the present action and contained a clause that the conveyance was by way of mortgage to secure a promissory note for $2,500 of even date made by Hassett to Matthew Nunan.

It was admitted that at the date of the sheriff's sale under execution in Cresswell *v.* McInerney, McInerney was the owner of at least an undivided one half of all the property described in the complaint, subject to judgment liens and encumbrances appearing to have existed at the time stated, and subject to final determination as to his rights in Moran *v.* McInerney. The Nicol and Goettinger judgments were obtained in 1895, and no executions ever issued on them. Other facts appear in the opinion.

Appellants rest their appeal principally upon the proposition that an attorney for a claimant to real estate pending litigation concerning the client's interest in said real estate

cannot acquire ownership thereof pending such litigation as against the client or as against the judgment creditors of said client; and that the creditors of the client are entitled to make the same objection to the attorney acquiring an interest therein as the client himself could make. It is further contended that the evidence showed that McInerney and Hassett have since the assignment of the sheriff's certificates and the making of the sheriff's deeds admitted an interest remaining in said property in the defendant McInerney. In support of their principal proposition appellants cite Weeks on Attorneys at Law, 2d ed., sec. 277, and cases in foot-notes; Bigelow on Frauds, vol. 1, p. 281, and cases cited in note to *Cunningham* v. *Jones*, 37 Kan. 477;[1] *Wickersham* v. *Crittenden*, 93 Cal. 29; *Cox* v. *Delmas*, 99 Cal. 104; and *Broder* v. *Conklin*, 121 Cal. 282.

This court said, in *Cox* v. *Delmas*, 99 Cal. 104, that the current of authorities does not go quite so far as the proposition of appellants. We find no case where the extreme view contended for is so nearly supported as in *Cunningham* v. *Jones*, 37 Kan. 477.[1] Some expressions of the court in that case would seem to go to the full extent claimed. But even in that case it appears that the interest purchased by the attorneys "was antagonistic to that of their client." The relation of attorney and client existed at the time the attorneys purchased a tax title to the property, and the action was still pending in which the client was contesting his right to the same property. The court said: "It is contrary to the policy of the law, and also contrary to the principles of equity, to permit an attorney at law to occupy at the same time and in the same transaction the antagonistic and wholly incompatible position as adviser of his client concerning a pending litigation threatening the title to his property and that of the purchaser of such property, in opposition to the title of his client." The facts do not appear with sufficient fullness to justify the claim that the rule of law now contended for was necessarily involved. If it had appeared in the case at bar that McInerney procured Hassett to purchase the sheriff's certificates of sale with intent to defraud the creditors of McInerney, and that it was Hassett's intention to hold the title

---

[1] 1 Am. St. Rep. 257.

for the benefit of McInerney, we would have a case quite different from the one now here. There is no evidence of any such mutual intent or any such intent on the part of either McInerney or Hassett. Plaintiff alleged that McInerney was insolvent when Hassett purchased the certificates. McInerney could have redeemed after Hassett took the assignments as well as before, if he had the means. But he had not the ability to do so, and the complaint alleges that it was with his consent and knowledge that Hassett purchased the certificates of sale, and he stated in his affidavit that it was true, as deposed by Hassett, that the latter "has an interest as owner of certain portions of the real estate described in the complaint herein." There is nothing in the case to show that Hassett purchased adversely to his client; on the contrary, plaintiff alleged, and the client affirmed, that it was with the client's consent. But appellants contend that "the presumption is, that the consideration recited for the original transfers of the sheriff's certificates to Hassett was paid by his client," and that because the assignments were made near the last day for redemption, and for a consideration coinciding closely with the amount necessary to redeem, "the presumption is, . . . that the transaction amounted to redemption by the client." In short, it must be presumed that the client furnished the money for the purpose of redeeming the property. There being no evidence aside from the mere relation of attorney and client that there was fraud in the transaction, appellants find themselves compelled to fall back on these presumptions. "A presumption is a deduction which the law expressly directs to be made from particular facts." (Code Civ. Proc., sec. 1959.) And, as we have seen, the fact from which appellants make their deductions is the fiduciary relation between the assignee of the certificates and the judgment debtor. We do not think the relation of attorney and client alone justifies the presumptions or deductions relied on. There was nothing unlawful in the purchase by Hassett made in good faith, and with consent of his client, and we do not see how it could be presumed to be in effect a redemption by the client; nor can we see how any presumption would arise that the client furnished the money to redeem and with intent to defraud creditors. The transaction being lawful, it seems to us that the presumption would rather be that the transac-

tion was fair and regular as between attorney and client. (Code Civ. Proc., sec. 1963, subd. 19.) Viewing the case from the standpoint of the attorney's power to bind his client by reason of his relation, it has been held, and we think correctly, that he has no authority to buy for his client property sold under execution, nor is it the duty of an attorney to do so, and certainly in the present case Hassett owed no duty to his client's creditors simply because he was McInerney's attorney. (*Beardsley* v. *Root,* 11 John. 464;[1] *Savery* v. *Sypher,* 6 Wall. 157; *Maynard's case,* 1 Walk. 472; *Washington* v. *Johnson,* 7 Humph. (Tenn.) 468.) Neither was McInerney called upon to redeem, even if he had other assets with which to do so; it was optional with him whether he redeemed from the execution purchasers or their assignees.

It was essential that the complaint should allege either that the debtor was the purchaser or that Hassett purchased for his benefit, or facts should be alleged showing a fraudulent purchase as to creditors. There is no evidence that McInerney, the debtor, was the purchaser; nor is there any evidence that Hassett purchased for him, except such inference as may be drawn from the relation of client and attorney. If there were facts which would make the purchase fraudulent as to creditors, they should be alleged and proved. Mr. Bump says there is a clear distinction between a fraud upon the debtor and a fraud upon creditors. In the one case he is the victim, and in the other he is either in fact or in law the perpetrator, in which latter case the creditors seeking to avoid a sale do not represent the debtor, but exercise rights paramount to his. "In the former case," says the author, "the remedy belongs to the debtor alone, and they [the creditors] cannot interfere when they are not in contemplation of the author of the wrong, and are only affected consequentially." (Bump on Fraudulent Conveyances, sec. 20.) The claim that Hassett purchased with intent to defraud or hinder McInerney's creditors finds no support whatever in the evidence, unless it may be inferred from the single fact that Hassett was McInerney's attorney at the time, and this we think wholly insufficient to put defendants upon their proofs.

As to defendant Grant, there is a total failure of proof. It is alleged that Hassett conveyed to him without considera-

[1] 6 Am. Dec. 386, and notes.

tion, and that Grant took with notice of all the facts alleged
in the complaint. There is no evidence that Grant took with
notice, and there is evidence that the deed to him was as a
mortgage to secure a debt of twenty-five hundred dollars.

It is claimed that both Hassett and McInerney admitted
that the latter had an interest in the property subsequent to
the assignments. We do not think the evidence so shows.
The affidavits of McInerney and Hassett, relied on by appel-
lants as so showing, do not bear them out.

There is some oral evidence, not very definite, as to the
value of various parcels; but this evidence is all given on the
assumption of clear title, free from encumbrances, and that
unless free the property could not be sold at all. In view of
the pending litigation affecting the property and McInerney's
interest therein, it cannot be said that the price paid was
inadequate or that there was gross disparity between the
amount necessary to redeem and the value of the property.

The judgment and order should be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment
and order are affirmed.

McFarland, J., Henshaw, J., Temple, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing
in Bank, and filed the following opinion on the 11th of August,
1902:—

BEATTY, C. J., dissenting.—The vital question involved
in this case is somewhat obscured by the complicated transac-
tions out of which the litigation arises. Divested of these
extraneous and unessential features the case may be thus
stated:—

The real property of a judgment debtor is sold under exe-
cution. Before the time for redemption has elapsed his attor-
ney takes an assignment of the certificate of sale from the
purchaser at the execution sale. The consideration for the
transfer is the amount required for redemption—a small
fraction of the value of the property. There being no evidence

on the point, the presumption is, that, even if the attorney paid his own money for the assignment, he did so without the consent of his client, and that he holds the title as an involuntary trustee for his client, with at most a lien for the sum expended in procuring the transfer. The question, then, is whether another judgment creditor of the client can subject his equitable estate in the land to the payment of his judgment. It is held that he cannot,—that the right of the client to enforce his equity against his trustee is a purely personal right which he may waive if he chooses so to do, and that his valuable interest in the land is at his option placed beyond the reach of an honest creditor. From this conclusion I dissent. I think, on the contrary, that the creditor has the right to proceed in his own behalf, as well against this estate as against any other valuable property of his debtor.