[L. A. No. 12323.  In Bank.—July 10, 1930.]

WILLIAM M. AYDELOTTE, Petitioner, v. THE STATE
BAR OF CALIFORNIA, Respondent.

A. Brigham Rose and William M. Aydelotte, *in pro. per.*, for Petitioner.

Walter J. Little for Respondent.

WASTE, C. J.—A complaint affecting the conduct of the petitioner, William M. Aydelotte, as an attorney at law and

as a member of The State Bar was filed with the Local Administrative Committee No. 5 of The State Bar for Los Angeles County by Virginia Hiddleson. After a service of a notice of the proceeding, the petitioner made answer to the serious charges contained in the complaint against him, and in due time the cause was heard before the local committee, the complainant and the attorney both appearing and testifying. As a result of this proceeding, the Board of Governors of The State Bar has recommended that the petitioner be disbarred from practicing as an attorney and counselor at law. Petitioner has filed his petition seeking to review this action of the Governors. He sets out· a considerable portion of the evidence adduced against him, and contends that such evidence does not support the findings made.

Virginia Hiddleson, the complainant, at the time of the transactions in question on which the disbarment recommendation is based, was just of age, an orphan, and a pupil at a private boarding-school, for which institution petitioner was the attorney. She had an income of something over $100 per month from two war risk insurance policies on the lives of her two brothers, who were killed in service. The government forwarded this money to the school to pay her tuition. She also had mortgages worth more than $7,000 which she had received from the estate of her parents and which were in the hands of her guardian. She claimed that the guardian was not accounting to her properly for this money. Petitioner secured an accounting from the guardian, and later a payment over of the property and funds on hand, discounting the notes and mortgages for $7,661.95. Petitioner took the money belonging to his client, used it in various enterprises, and for a time paid the girl ten per cent annually for its use, giving her a sort of "pass-book" for some purpose. He was then forced into bankruptcy. The only dispute appearing in the record is as to whether or not Virginia Hiddleson loaned the money to petitioner personally, or whether he took it for investment in a building and loan association. He represented to her that it was so invested. The attorney contends that the girl loaned the money to him. It does appear that he used the money for his own benefit, and when the bankruptcy proceedings were instituted, he and his wife told the girl she had nothing to

fear. Becoming alarmed, however, she sought independent advice, and demanded that the attorney return her papers. He did so, and among them she found a printed form of promissory note for $7,661.95, signed by petitioner, "due on or before five (5) ———— after date," with the material parts relating to payment on default stricken out. Petitioner was arrested, charged with embezzlement and convicted, but a new trial was granted. On the subsequent trial he was acquitted.

The most that can be said in favor of petitioner is that the local committee of The State Bar, as any other fact-finding body, might have come to another conclusion than that reached by it. The testimony of Virginia Hiddleson is somewhat vague and, at times, as developed under cross-examination, contradictory and uncertain as to just what she told the attorney to do with her money; but, on the whole, she narrated the story simply and, we think, truthfully. While there is nothing bearing directly on the fact in the record, the committee in its report to the Governors recites that an "affliction" under which the girl labored explains these inconsistencies, and is of such nature that the accused must have known that his client was in such a condition that she was not fully cognizant of the purport of the transactions between herself and her attorney. It does appear that she was an unsophisticated school girl without business training or judgment, and, at least part of the time, relying upon the attorney and his wife for counsel and advice. All the facts led the committee to believe that the accused took the money from the complainant with an utter disregard for the welfare of his client and with the intent to use the money for purposes other than that for which she supposed it was really entrusted to him.

The committee further found that it was the intention of the attorney to mislead the complainant into believing that the funds had been invested by him in the Insurance, Building & Loan Association, and that this conduct, and in fact all of the conduct, of the accused in the matter was sufficient to justify the finding that the attorney wilfully set out to defraud the complainant of these funds.

Petitioner argues upon those portions of the evidence which appear to be in his favor, and apparently with some confidence relies upon the fact that he had executed his per-

sonal promissory note in favor of his client for the amount involved, as showing knowledge and an agreement upon her part that he was only personally borrowing the money from her. The attorney kept this note in his possession, and the girl denied having any knowledge of it until she found it in the papers belonging to her. Upon being questioned by the committee, he admitted that the note which he produced before it had been executed shortly before the investigation, but explained that fact by stating that he had executed a note at the time he received the money, but that it had become smeared with ink when he was handing the girl her papers, and he destroyed it "in a fit of anger and foolishness" and had executed a new note to take its place.

The evidence fairly supports the conclusion of the local committee and Board of Governors of the State Bar that the attorney took this money from his client to invest it for her; that he led her to believe that he had so invested it; that because his client was in fact not strong-minded, he merely made suggestions of fact to her instead of making any positive assertions; that she relied upon these suggestions and accepted them as facts; and that the attorney used his client's money in business schemes, and that when they collapsed he was facing bankruptcy, and made out his promissory note to her and placed it among her papers for the purpose of contending that she had loaned the money to him personally.

Petitioner seeks to invoke in his own behalf a decision of this court, decided before the enactment of the State Bar Act (Stats. 1927, chap. 34, p. 38), to the effect that an accusation looking to the disbarment of an attorney for conduct involving gross moral turpitude is in the nature of a criminal charge, and that all intendments should be in favor of innocence. (*In re Bar Assn.* v. *Sullivan,* 185 Cal. 621 [198 Pac. 7].) The answer is that the qualified judges who are by law charged with the duty of passing upon the truth of the charges against petitioner have resolved all questions against him. On this review, the burden is upon the petitioner to show wherein the decision of the Board of Governors of The State Bar is erroneous or unlawful. (State Bar Act, *supra,* sec. 26.) He has not met that burden.

Petitioner has not met the burden of overthrowing the serious charges preferred against him, which were found to

be sufficiently substantiated to warrant the recommendation for his disbarment. He stands before this court charged with and found guilty by the Board of Bar Governors of a most serious and wilful violation of his duty as an attorney and counselor at law.

Petitioner contends that the members of the local committee which conducted the hearing in his case were biased. A hearing in this matter was had in the absence of the petitioner, after which the committee made findings recommending his disbarment. Upon such recommendation being considered by the Board of Governors, petitioner contended that he had not received notice of the hearing, and upon the showing made by him the Board of Governors ordered the matter referred back to the local committee, and that the petitioner be notified of the hearing. With the attorney and his counsel present, the local committee proceeded to again hear the testimony in the case. The contention of the petitioner that the members of the local committee were biased is based upon the theory that they having previously heard the evidence and having recommended his disbarment, thereby disqualified themselves to rehear the case. The members of the committee, comprising a majority who finally sat in the matter (one not sitting in the second hearing), expressed themselves in a way to show that they were not disqualified by reason of any relationship to the parties, or by reason of having acted as attorney for either of the parties, and that they knew of no reason why petitioner could not be accorded a full and impartial hearing. These statements appear to have been satisfactory to petitioner, for no further objection to proceeding was offered. Rule 18 of the procedure of The State Bar provides that no member of a local committee shall be disqualified unless he would be disqualified under subdivisions 1, 2 or 3 of section 170 of the Code of Civil Procedure, if acting as a judge. It is apparent that no such grounds of disqualification existed in this case.

It is therefore ordered that petitioner, William M. Aydelotte, be disbarred from practicing law in the courts of this state, and that his name be stricken from the list of attorneys and counselors at law.

Curtis, J., Seawell, J., Richards, J., Shenk, J., Preston, J., and Langdon, J., concurred.