[L. A. No. 18639. In Bank. Aug. 3, 1943.]

JOHN FOSTER SHEFFIELD, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

William Roy Ives for Petitioner.

Paul J. Fritz and Jerold E. Weil for Respondent.

THE COURT.—By a notice to show cause, The State Bar charged John Foster Sheffield with: "Violating your oath and duties as an attorney and counselor at law within the meaning of Section 6103 of Article 6 of the Business and Professions Code of the State of California, as the same are prescribed by Sections 6067 and 6068 of Article 4 of the Business and Professions Code of the State of California; and violating Rules 5 and 7 of the Rules of Professional Conduct of the State Bar of California; and the commission of acts involving moral turpitude and dishonesty within the meaning of Section 6106 of Article 6 of the Business and Professions Code of the State of California. . . ." Following a hearing upon these charges, the Board of Governors recommended that Sheffield be suspended from practice for a period of three months. In response to a writ of review issued by this court upon Sheffield's petition, the record of the proceeding has been presented for consideration.

It appears that in 1941, H. L. Blake retained the petitioner in connection with a dispute over premises which were the subject of a contract between him and Grace S. Cornwell. As attorney for Blake, who paid him $50, the petitioner filed in the superior court a complaint in which there was demanded from Mrs. Cornwell an accounting under the contract and damages for its breach; the plaintiff also asked the court for an injunction and declaratory relief. Sheffield later filed an amended complaint. Upon these complaints, a restraining order was issued.

Shortly afterward, Blake obtained other counsel who was substituted for the petitioner. The action was then prosecuted to a judgment by which Mrs. Cornwell was enjoined from

taking possession of the premises in controversy and was ordered to account for money which had been received by her. The plaintiff was also awarded damages.

Five months later, the petitioner, as attorney for Mrs. Cornwell, filed a complaint against his former client in which she sought damages for a breach of the same contract which was the subject of the prior action. Soon after this complaint was filed, according to the findings of fact made by the Local Administrative Committee, the attorney for Blake demanded that Sheffield withdraw from the action upon the ground that he had represented Blake in the same matter. Sheffield refused to do so. Blake's counsel then moved the court to require Sheffield's withdrawal from the case. On the day of and shortly before the hearing of this motion, petitioner served on Blake's attorney a copy of a substitution of attorneys in which another attorney was substituted for him. The motion was nevertheless pressed, and the court ordered that Sheffield "be excluded . . . from taking any part in the trial of the . . . action as attorney of record for plaintiff, or as an attorney assisting or cooperating with any other attorney of record of said plaintiff, or at all."

Notwithstanding this order, at the time the action was set for trial Sheffield appeared on behalf of counsel of record for Mrs. Cornwell and requested a continuance. Following several continuances, Blake's counsel moved for a dismissal of the action upon the ground that Mrs. Cornwell's rights had been concluded by the judgment in the former litigation. This motion was granted.

Upon these facts the committee determined that the petitioner had violated his oath and the duties of an attorney at law. In making this determination, the committee stated that the members "are of the opinion that respondent has violated one of the most important and fundamental rules governing the relationship between attorney and client. . . . We can imagine certain instances where there might be a reasonable doubt as to the propriety of an attorney occupying a position adverse to a former client, but the present one certainly does not fall within such a zone of doubt. There would appear to be no question but that the subject matter of the two actions involved was exactly the same. The pleadings and judgment of dismissal in the second action would seem to be conclusive in this regard." The committee recommended

that Sheffield be suspended from the practice of law for a period of three months.

When the matter came before the Board of Governors, the petitioner appeared with his counsel who made a statement. By unanimous vote the findings of fact of the committee were adopted. Two members of the board voted against the committee's recommendation of suspension for three months upon the ground that it is insufficient; all of the other members present adopted that recommendation.

The first point urged by the petitioner is that the findings of fact and conclusions of law made by the committee are not based upon the charges against him as stated in the notice to show cause. He asserts that he was charged with unethical conduct in representing conflicting interests and that the committee found that he had not done so. But the findings follow exactly the wording of the notice to show cause except that they omit any mention of rule 7 which the committee found had not been violated.

Sheffield also asserts that the evidence is insufficient to support the findings and recommendations of The State Bar and that they are contrary to it. He calls attention to the fact that no complaining witness testified, and relies upon the testimony of Blake's attorney, who volunteered the opinion to the committee that the petitioner "was guilty of no act that could be worthy of punishment by The State Bar." He also relies upon the fact that the transcript shows no evidence of any confidential information received by him from Blake.

The Rules of Professional Conduct adopted by The State Bar provide: "A member of The State Bar shall not accept employment adverse to a client or former client, relating to a matter in reference to which he has obtained confidential information by reason of or in the course of his employment by such client or former client." (Rule 5.) A reasonable construction of it, said this court in *Galbraith* v. *State Bar*, 218 Cal. 329 [23 P.2d 291], "suggests that the subsequent representation of another against a former client is forbidden not merely when the attorney *will* be called upon to use confidential information obtained in the course of the former employment, but in every case when, by reason of such subsequent employment, he *may* be called upon to use such confidential information." And the court also declared, adopting its statement in *Wutchumna Water Co.* v. *Bailey*, 216 Cal. 564 [15 P.2d 505], that "an attorney is forbidden to do either of two

things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship.''

The evidence against the petitioner shows a disregard of this rule and also of the elementary principles of good faith and fair dealing upon which it rests. He could not have filed the complaint against Mrs. Cornwell without obtaining from Blake information concerning the contract sued upon and the facts relating to the conduct of the parties in connection with the premises since that time. Yet five months later he represented Mrs. Cornwell in an action brought by her to secure damages on account of her eviction from the premises which were the subject of the same contract and ignored the order of court which excluded him from further participation in the case.

Sheffield's defense, as set forth in his answer to the notice to show cause and as related in his testimony, is that when Mrs. Cornwell consulted him he informed her that he did not know whether, with propriety, he could represent her. He then telephoned to the Los Angeles office of The State Bar and asked for E. W. Hendrick, an assistant secretary. To the person who represented himself to be Hendrick, he stated the facts and inquired whether he could ethically act as attorney for Mrs. Cornwell. Petitioner was informed, he declared as a witness in his own behalf, that if he had not received any confidential information from Blake, which could be used against him in the second action, there was no reason why he could not represent Mrs. Cornwell. An employee of The State Bar testified, however, that at the time of this asserted telephone call Hendrick was no longer in its employ. This witness also stated that, after Hendrick left the employ of The State Bar, two or three persons acted in his place and a telephone call concerning a question of ethics was placed with another one of the secretaries. And although the petitioner testified that he had asked for and spoken with Hendrick, the conversation, he later stated, might have been had with someone else.

The petitioner also testified that before undertaking to represent Mrs. Cornwell, he discussed the proprieties of the matter with three attorneys with whom he had an office association. According to his testimony, they told him they knew of

no reason why he might not do so. The statements of these attorneys was repeated to Blake's attorney, said Sheffield in his testimony, when the propriety of filing the action on behalf of Mrs. Cornwell was being discussed, and the petitioner offered to submit the question to the trial judge in chambers and abide by his ruling.

But this testimony did not impress the committee as being entitled to any great weight. If Sheffield discussed the matter with any employee of The State Bar qualified to give an opinion, the committee concluded, it appears improbable that he disclosed all of the essential factors. It may also be observed that no employee of The State Bar can give an attorney permission to violate the Business and Professions Code or the Rules of Professional Conduct. An opinion of a fellow attorney is likewise no defense to wrongdoing, although the leniency of the committee's recommendation indicates that it gives some consideration to this evidence.

It is ordered that John Foster Sheffield be suspended from the practice of law for a period of three months, effective thirty days after the filing of this opinion.

CARTER, J.—I dissent. From my examination of the record of this case I am persuaded that the majority opinion does not contain a fair statement of the facts and resolves all intendments against petitioner contrary to the settled rule in cases of this character. (*Hildebrand* v. *State Bar*, 18 Cal.2d 816 [117 P.2d 860]; *Golden* v. *State Bar*, 213 Cal. 237 [2 P.2d 325]; *Aydelotte* v. *State Bar*, 209 Cal. 737 [290 P. 41]; *Furman* v. *State Bar*, 12 Cal.2d 212 [83 P.2d 12].)

The majority opinion states that "Five months later, the petitioner, as attorney for Mrs. Cornwell, filed a complaint against his former client in which she sought damages for a breach of the same contract which was the subject of the prior action. Soon after this complaint was filed, according to the findings of fact made by the Local Administrative Committee, the attorney for Blake demanded that Sheffield withdraw from the action upon the ground that he had represented Blake in the same matter. Sheffield refused to do so." However, the record discloses that at the time Blake's attorney suggested that petitioner withdraw as attorney for Mrs. Cornwell, petitioner advised him that he had sought advice from a secretary of The State Bar and three attorneys who were associates in his office as to whether or not it would be a violation of legal

ethics for him to represent Mrs. Cornwell in said action, and that he had been advised by each of them that such conduct would not be unethical. He further offered to submit the matter to the trial judge at chambers and abide by his decision as to whether or not he should continue to represent Mrs. Cornwell in said action. This the attorney for Blake refused to do, and thereafter gave notice of motion to have petitioner excluded as attorney for Mrs. Cornwell, but before said motion was heard, petitioner served and filed a substitution of attorneys pursuant to which another attorney was substituted in his place. Petitioner did not thereafter participate in the case except to appear and request a continuance of the trial of the action upon the ground that the attorney substituted in his place was ill.

The attorney for Blake objected to a continuance and moved for judgment in favor of the defendant which was granted by the trial court. At the hearing before the Local Administrative Committee in this proceeding, said attorney testified "It suddenly occurred to me I had what I might call a long shot and I could throw the case out of court by taking the position that Mr. Sheffield had no business in the case either physically or as attorney of record. . . . The plaintiff not being there in person or by an attorney, [the] judge thought it over a few minutes and finally ordered a default judgment, and that ended the case."

In explanation of filing the second action for Mrs. Cornwell against his former client Blake, petitioner testified herein that "I have always taken the position, it was a different matter and wasn't related in so far as one was a conflicting interest with the other. I took the position, and the other attorneys did likewise, that the injunction suit would lie regardless of whether there was a breach of contract. In other words, I believe the decisions are clear . . . that regardless of a contract of employment that you have with an employer that an employer in spite of that contract can enjoin you from coming on to his premises even during the life of that contract." It is worthy of note, too, that adversary counsel testified herein that after he had been substituted for petitioner as counsel for the plaintiff Blake in the first action, he there argued that any claim by Mrs. Cornwell against Blake for damages would have to be brought in a subsequent action.

Petitioner's testimony that he talked with some one at The

State Bar office prior to filing the action for Mrs. Cornwell against his former client is confirmed by the adversary counsel in that action who, when called by The State Bar as a witness in this proceeding, testified, "I do believe in good faith he [petitioner] came here" to The State Bar and made inquiry as to the propriety of his filing the action "because he told me that right in the beginning." This witness further testified "I don't think his intention was injurious, in effect to hurt Mr. and Mrs. Blake by reason of the prior employment. . . . I don't think Mr. Sheffield at any time was guilty of any conduct that would be worthy of any punishment from The State Bar. I feel I know as much about the case as anyone here."

In challenging the sufficiency of the evidence to support the finding that in filing the first action he had acquired confidential information from Blake concerning matters litigated in the second action, petitioner refers to his undisputed testimony that he had not acquired such information and that the factual basis for each action rested on matters of record, the first being a possessory action predicated on title to the property, and the second being based on the employment contract which also had been recorded. Neither Blake, petitioner's former client, nor Mrs. Cornwell, his client in the second action, was called by The State Bar. Adversary counsel was called and, as indicated above, he stated he did not believe petitioner had been guilty of any conduct warranting punishment.

The majority opinion quotes from the decision in *Galbraith* v. *State Bar*, 218 Cal. 329 [23 P.2d 291], as stating the applicable rule of law. It is there said, at page 333, that "an attorney is forbidden to do either of two things after severing his relationship with a former client. He may not do anything which will injuriously affect his former client in any matter in which he formerly represented him nor may he at any time use against his former client knowledge or information acquired by virtue of the previous relationship." Petitioner does not challenge this rule but contends that under all the facts disclosed by the record he should not be disciplined for representing Mrs. Cornwell against Blake, his former client. His representation of Blake in the first action extended no further than the filing of the complaint and other than the fact that both actions trace their origin to Blake's ownership of the property and Mrs. Cornwell's operation of a beauty

parlor thereon under contract with him, the evidence herein fails to disclose that petitioner obtained any confidential information during his relations with Blake which he could have used or did use to Blake's disadvantage. In addition, according to petitioner's uncontradicted testimony, he filed the complaint in the second action for Mrs. Cornwell only after he had made inquiry at The State Bar office and of his office associates as to the propriety of his proceeding in the matter. When challenged by Blake's counsel prior to trial of the second action, petitioner immediately informed him that he had cleared the matter through The State Bar office and then offered to submit it to the trial judge in chambers before trial. The latter offer having been declined and a motion having been made by adversary counsel to exclude him from the case, petitioner substituted himself out.

In my opinion the record in this case fails to establish a violation of rule 5 of the Rules of Professional Conduct, and is therefore insufficient to sustain the findings and recommendation of the Local Administrative Committee and Board of Governors. A reasonable and common sense application of this rule would not bar an attorney from accepting employment adverse to a former client unless such employment related "to a matter in reference to which he had obtained *confidential information* by reason of or in the course of his employment by such . . . former client." The evidence is without conflict that no "*confidential information*" was obtained by petitioner from Blake. The latter did not testify in this proceeding, and his attorney testified positively that petitioner was not guilty of any misconduct whatsoever.

Obviously, rule 5 was adopted for the purpose of protecting a client against the use by his former attorney of confidential information obtained while the relationship of attorney and client existed between them. As so construed it has a highly salutary purpose. Those who have been engaged in the practice of law for a decade or more are cognizant of the fact that an attorney may accept employment against a former client in many matters without committing a violation of the above-mentioned rule.

In *Golden* v. *State Bar*, 213 Cal. 237, 247 [2 P.2d 325], it is stated that charges against an attorney "must be sustained by convincing proof to a reasonable certainty and any reasonable doubt should be resolved in favor of the accused." Aside

from any question as to the soundness of petitioner's judgment in filing the second action against his former client, I find nothing in the record indicating that he intended thereby to take any advantage of such former client and the disciplinary proceeding should therefore be dismissed.